[No. 25344. Department Two. January 17, 1935.]

GARLAND W. LONG *et al., Respondents,* v. ROYAL
INSURANCE COMPANY, LIMITED, *Appellant.*[1]

*Clarke & Clarke,* for appellant.
*Smith, Matthews & Dunn,* for respondents.

BLAKE, J.—This is an action on an automobile insurance policy for the value of a motor truck. The case was tried to a jury, which returned a verdict for plaintiffs. From judgment entered on the verdict, defendant appeals.

Appellant has made some twenty specific assignments of error, but they all present the same question: Was the loss of the truck due to collision or upset, under the terms of the policy?

The policy covered "actual loss or damage to the automobile insured, if caused solely by accidental collision with another object, or by upset . . ."

The loss of the truck was unique, at least in so far as the history of automobile insurance is concerned. About six o'clock of the evening of November 12, 1932, respondent Garland Long, with his father, left Index in the truck—driving east on the Stevens pass high-

[1]Reported in 40 P. (2d) 132.

way. The highway follows the course of the Sky-
komish river. At a point about five miles east of
Index, the highway passes through a deep cut. At
both the east and west ends of the cut, the highway
runs right along the bank of the river. The bank at
the west end of the cut is precipitous. The surface
of the water ordinarily is eighteen feet below the level
of the highway. On the night in question, however,
due to heavy rains, the water level of the river had
risen to a point within four or five feet of the surface
of the highway.

Long, after leaving Index, had driven through pools
of water standing in the road. Before reaching the
cut, he had passed a car or two coming from the east,
indicating the highway was passable. As he ap-
proached the cut, he observed water in it, but, assum-
ing it was standing water, he drove on into the cut.
After he had proceeded about forty feet, the front
wheels of the truck bogged down to such an extent
that he could proceed neither forward nor backward.
Long and his father then discovered that they were in
swiftly running and rapidly rising water. The river
had overflowed its banks to the east of the cut and a
considerable portion of the stream was flowing through
it and emptying into the river channel again at the
west end. This made an island between the highway
and the channel of the river.

Long and his father, finding they could not extricate
the truck, attempted to make the mainland. The water
was flowing too swiftly through the cut for them to
make it, so they retreated to the island. All this
occurred about six-thirty p. m. Long and his father
were rescued from the island about eleven p. m.

In the meantime, the truck disappeared, and has
never been seen since. The last the Longs saw of it
was after it had been carried by the water back to the

west end of the cut, where it sat tilted toward the river. After the flood waters had subsided, there were found marks on the boulders forming the surface of the river bank to the west of the cut, indicating that the truck had been carried into the main channel of the river. It is not seriously contended, but that is the only inference that can be drawn as to what happened to the truck.

Segregating its attack on the judgment into three parts, appellant makes a very logical argument that none of three eventualities constituted a collision or upset, under the terms of the policy. First, appellant says that the bogging down of the truck in the highway was not a collision, under our holdings in *Ploe v. International Indemnity Co.*, 128 Wash. 480, 223 Pac. 327, 35 A. L. R. 999, and *Olympic Securities Co. v. Pennsylvania Fire Ins. Co.*, 135 Wash. 307, 237 Pac. 707; second, that the action of the water in carrying the truck from where it was stalled back into the river channel was not a collision, under the terms of the policy; third, that the precipitation of the truck from the highway into the river was not an upset, under the holding in *Ploe v. International Indemnity Co.*, *supra*. The contention, elaborated, is that neither the first nor third of the misadventures was the proximate cause of the loss of the truck; that the second (the action of flood waters against which respondents were not insured) was the proximate cause of the loss.

For the purposes of this case, we think the first and third propositions may be conceded. So, the question narrows as to whether the action of the water was a collision, within the terms of the policy. For there can be no question but that the action of the water flowing down the roadway carried the truck to its doom, just as certainly as if a tractor had met it head-on and backed it up out of the cut and over the

river bank. Water is an object just as tangible as a steel tractor, and is so recognized in judicial opinion and by the writers on automobile insurance. *Ringo v. Automobile Ins. Co.,* 143 Ore. 420, 22 P. (2d) 887; *Columbia Ins. Co. v. Chatterjee,* 93 Okla. 249, 219 Pac. 102; *Gans v. Columbia Ins. Co.,* 99 N. J. L. 44, 123 Atl. 240; Sunderlin on Automobile Insurance, § 711; Simpson on The Law Relating to Automobile Insurance (2d ed.), § 252.

Now, was the action of the water a collision? Appellant contends that the loss was due to "flood water," against which respondents were not insured. In a sense, this is true, in that, due to excessive rains, the river was in flood and overflowed its banks. But that does not preclude the idea that water, in motion, collides with that with which it comes in contact. The noun "collision" is defined in The Century Dictionary and Cyclopedia as: "The meeting and mutual striking or clashing of two or more moving bodies, or of a moving body with a stationary one." The same authority, illustrating the meaning of the verb, gives the following quotation: "Wave *collisions* wave." So it would seem clear that, water being an object, its contact, when moving, with a stationary object would constitute a collision. The fact that water is of less density than a solid object, we have reason to know, does not make its contact, when in motion, any the less destructive. If such a contact may not be called a collision, we are at a loss for words by which it may be properly described.

Only two cases cited seem to us to bear any analogy at all to the case at bar. One, *Gans v. Columbia Ins. Co., supra,* supports our position. The other, *Aetna Casualty & Surety Co. v. Cartmel,* 87 Fla. 495, 100 So. 802, 35 A. L. R. 1013, seems to be against it. In the *Gans* case, a flying boat, because of motor trouble, was

forced to land in the sea a short distance off shore. Being unable to rise, it was carried to the shore, where it sustained damage from the beating of the surf. The supreme court of New Jersey held the damage was sustained through "collision." In the *Cartmel* case, an automobile bogged down on a Florida beach. The tide came in and submerged the machine. It sustained damage which the supreme court of Florida held was not the result of a collision.

There is a possible distinction between the two cases, in that, in the former, the damage was done by the pounding of the surf, while in the latter, the damage was due to the seepage of salt water and sand into the mechanical parts of the automobile. Distinctions aside, we are satisfied that the loss of respondent's truck was due to "an accidental collision with another object," under the terms of the policy.

Judgment affirmed.

BEALS, STEINERT, and HOLCOMB, JJ., concur.