PROVIDENCE WASHINGTON INSURANCE COMPANY V.
O. C. PROFFITT ET AL.

No. A-3003. Decided April 25, 1951.
Rehearing overruled May 30, 1951.
(239 S. W., 2d Series, 379.)

*Kerr, Gayer & Sutton* and *Lloyd Kerr,* all of San Angelo, for petitioner.

When the evidence showed that after the splash or leaning of the car, it came to a complete stop without any known damage; that the flood rose and the higher water turned it over, washed it down the river, and tore it up, a finding was authorized that the flood water was an intervening cause of the car's destruction, and it was error for the Court of Civil Appeals to hold otherwise. Federal Life Insurance Co. v. Raley, 130 Texas 408, 109 S.W. 2d 972; Mercury Ins. Co. v. McClellan, 216 Ark. 410, 225 S.W. 2d 931, 14 A.L.R. 2d 806; Firemen's Ins. Co. v. Weatherman, 193 S.W. 2d 247.

*Clyde Vinson,* of San Angelo, for respondent.

On the proposition that the flood water which washed the car from the crossing and damaged it was an intervening cause, not covered by the collision and upset provision of the insurance policy. MacDonald v. Carlisle, 146 Texas 206, 206 S.W. 2d 224; San Antonio & A. P. Ry. Co. v. Behne, 231 S.W. 354; American Auto. Ins. Co. v. Baker, 5 S.W. 2d 252; Reliance Ins. Co. v. Naman, 118 Texas 21, 6 S.W. 2d 743; 45 C.J., sec. 835, 844.

MR. JUSTICE CALVERT delivered the opinion of the Court.

O. C. Proffitt sued Providence Washington Insurance Company to recover loss or damage to his automobile. The San Angelo National Bank, San Angelo, Texas, intervened asserting a claim as mortgagee to a portion of the recovery, if any, under a loss-payable clause attached to the policy. Trial was to the court and judgment was for the defendant. No findings of fact or conclusions of law were filed. The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for Proffitt and Bank. 234 S.W. 2d 894.

The policy of insurance is an "Automobile Policy, Physical Damage Form" and contains a number of coverages. The coverage purchased by Proffitt and under which recovery is sought is Coverage B-1 and reads as follows:

"COVERAGE B-1—COLLISION OR UPSET

Loss of or damage to the automobile caused by collision of the automobile with another object or by upset of the automobile."

In his petition (adopted by intervener) plaintiff alleged that his "automobile was totally destroyed or damaged by flood-waters of the Concho River" when his automobile was driven upon a causeway across said river "and said automobile hit said water and causeway and was upset by said floodwaters of said river." He further alleged "that said waters upset said automobile on said causeway, washing said automobile off said causeway and said automobile was thereby and as a result of such collision or upset by said water rendered useless and worth-less."

The respondent's son, Eugene Proffitt, was the only witness to testify on the trial of the case. His testimony may be sum-marized as follows: On July 5, 1948, young Proffitt, traveling in an easterly direction, drove the automobile upon a low-water causeway across the Concho River at First Street in the City of San Angelo, Texas. Normally the river flows over the cause-way at a depth of six or seven inches but the water was deeper on this occasion, the river being in some stage of flood. The automobile hit the water with a "splash" and came to a halt in an inclining position with the wheels on the right side off of the south side of the causeway. At this point the water on the left or north side was up to the running board of the automobile and the water on the right or south side was up to the door handle, but so far as the evidence reflects no damage to the car had been done. The driver was unable to extricate the auto-mobile and the force of the floodwaters of the river washed it from the causeway into the river and turned it "half over". An effort to pull the automobile out with a wrecker failed and the automobile was damaged beyond repair by the water.

It was the view of the Court of Civil Appeals that when the automobile hit the water on the causeway and came to rest with the right wheels off of the causeway there was a collision and an upset within the meaning of the insuring clause of the policy which collision and upset was the proximate cause of the loss. Petitioner does not seem to question the conclusion of the Court of Civil Appeals that the event just described con-stituted a collision and an upset; it does question, however, that such collision and upset was the proximate cause of the ensuing damage to the automobile. It is the contention of petitioner that the evidence is sufficient to support an implied finding by the trial court that the causal connection between the events des-cribed and the loss of the car was broken by a new and inde-pendent cause—the floodwaters—which itself became the direct and proximate cause of the loss and rendered the original col-

lision and upset but a remote cause of the loss. Petitioner then reasons that under the policy definition of "loss caused by collision or upset" found in Coverage A in the policy there is no liability.

Coverage A reads as follows:

"COVERAGE A—COMPREHENSIVE—LOSS OR DAMAGE TO THE AUTOMOBILE, EXCEPT BY COLLISION.

Any loss of or damage to the automobile except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached. Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset."

■ Respondent had not paid for and did not have Coverage A but we may examine this provision for the purpose of "determining the respective obligations and rights of the parties to the policy." Glens Falls Ins. Co. v. McGown, 149 Texas 587, 236 S. W. 2d 108. An analysis of the language of Coverage A and B-1 makes it unnecessary to decide whether the evidence was such as to support an implied finding by the trial court that the causal connection between the original collision and upset and the damage to the car was broken by the intervention of a new and independent cause. We have concluded that even though the automobile had come to rest after its original collision with the water only to be thereafter washed from the causeway by the force of floodwaters, petitioner is yet liable under the terms of the policy.

■ The provision of Coverage A that "Breakage of glass and loss caused by missiles, falling objects, fire, theft, explosion, earthquake, windstorm, hail, water, flood, vandalism, riot or civil commotion shall not be deemed loss caused by collision or upset" cannot be used to defeat a recovery under Coverage B-1. The obvious purpose of this provision was to enlarge the liability of petitioner under Coverage A and was not to restrict the liability of petitioner under Coverage B-1. To those who paid for Coverage A petitioner obligated itself to pay for *all* loss or damage to the automobile *except* loss or damage caused by collision or upset. By the quoted language it then removed any possibility of defeating recovery for loss or damage resulting from the causes named, including water and flood. If petitioner had intended the language used in the last sentence of Cover-

age A (enlarging its liability under that coverage) to be used also to restrict its liability under Coverage B-1, the same language could have been written into Coverage B-1 as a limitation of liability. It is a settled rule in this state that policies of insurance will be interpreted and construed liberally in favor of the insured and strictly against the insurer. United Service Automobile Ass'n v. Miles, 139 Texas 138, 161 S.W. 2d 1048; Wood v. Southern Casualty Co., 270 S.W. 1055 (writ dism.); 24 Tex. Jur. p. 705, sec. 29. It is also well settled that exceptions and words of limitation will be strictly construed against the insurer. American Fidelity & Casualty Co. Inc. v. Williams et al., 34 S.W. 2d 396, 402 (writ. dism.); Norwood v. Washington Fidelity Nat. Ins. Co., 16 S.W. 2d 842 (no writ history); 24 Tex. Jur. p. 704, sec. 28. We will certainly not write a limitation of liability into a policy where none exists.

Having concluded that the language of Coverage A does not limit or restrict the liability of petitioner under Coverage B-1, we are free to determine the rights of the parties as those rights exist and are expressed alone in the language of Coverage B-1. The question to be answered is whether, the automobile having come to rest without damage, the damage thereafter accruing was "caused by collision of the automobile with another object or upset of the automobile". Here again we are guided by the rule of liberal construction in favor of the insured.

We hold that the force of the floodwaters against the automobile was a collision within the meaning of the language of Coverage B-1 and that this collision was the proximate cause of the damage to the automobile. Our holding is not without basis in respectable authority. That water is an object with which an automobile may have a collision within the meaning of an insurance policy has been held in the following cases: Harris v. American Casualty Co., 83 N.J. Law 641, 85 Atl. 194, 44 L.R.A., N.S., 70; Ringo v. Automobile Ins. Co. of Hartford, Conn., 143 Ore. 420, 22 Pac. 2d 887; Long v. Royal Insurance Company, 180 Wash. 360, 40 Pac. 2d 132, 105 A.L.R. 1423. See also 45 C.J.S. 837. It has been held also that a collision results from the movement of water against the insured property. Long v. Royal Ins. Co., supra; Gans v. Columbia Ins. Co., 99 N.J. Law 44, 123 Atl. 240.

In the Long case a truck stalled on a section of highway which was covered by water overflowing from a river. Rising waters washed the truck from the highway into the river. In holding that the insured could recover under a policy covering loss

or damage by collision or upset the Supreme Court of Washington said:

"So, the question narrows as to whether the action of the water was a collision, within the terms of the policy. For there can be no question but that the action of the water flowing down the roadway carried the truck to its doom, just as certainly as if a tractor had met it head-on and backed it up out of the cut and over the river bank. Water is an object just as tangible as a steel tractor, and is so recognized in judicial opinion and by the writers on automobile insurance. Ringo v. Automobile Ins. Co., 143 Or. 420, 22 Pac. 2d 887; Columbia Ins. Co. v. Chatterjee, 93 Okl. 249, 219 Pac. 102; Gans v. Columbia Ins. Co., 99 N.J. Law 44, 123 Atl. 240; Sunderlin on Automobile Insurance, sec. 711; Simpson on The Law Relating to Automobile Insurance (2d Ed.) sec. 252.

"Now, was the action of the water a collision? Appellant contends that the loss was due to 'flood water,' against which respondents were not insured. In a sense this is true, in that, due to excessive rains, the river was in flood and overflowed its banks. But that does not preclude the idea that water, in motion, collides with that with which it comes in contact. The noun 'collision' is defined in the Century Dictionary and Cyclopedia as: 'The meeting and mutual striking or clashing of two or more moving bodies, or of a moving body with a stationary one.' The same authority, illustrating the meaning of the verb, gives the following quotation: 'Wave *collisions* wave.' So it would seem clear that, water being an object, its contact, when moving, with a stationary object would constitute a collision. The fact that water is of less density than a solid object, we have reason to know, does not make its contact, when in motion, any the less destructive. If such a contact may not be called a collision, we are at a loss for words by which it may be properly described."

There is no doubt under the evidence that the automobile was upset when it was washed from the causeway and turned "half over". The extent of the damage to the Automobile flowing immediately from the collision and the upset is not shown and is immaterial. It is immaterial also that the injury was done in fact by water. The collision of the water with the automobile set in motion the series of events which, unbroken by the intervention of any new and independent cause, led to the destruction of the automobile. The collision was the peril insured against. It follows that the loss or damage to the automobile was "caused by collision of the automobile with another object

or upset of the automobile" within the meaning of Coverage B-1 even though the automobile had come to rest, without damage, following the original collision and upset described in the opinion of the Court of Civil Appeals. Federal Life Ins. Co. v. White, 23 S.W. 2d 833 (writ ref.).

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered April 25, 1951.

MR. JUSTICE WILSON dissenting.

I respectfully dissent for the reason that the majority decision here seems to be in conflict with the very recent decision of Glens Falls Ins. Co. v. McCown, 149 Texas 587, 236 S. W. 2d 108.

The majority holds that the definition found in paragraph A of the policy of "collision and upset" as not including loss caused by flood cannot be considered with paragraph B-1, and, therefore, the express provision that collision and upset shall not include damage by water or flood does not limit Coverage B-1. In this I differ with them. The entire policy should be construed as a unit and the definition of each coverage should be carefully compared for overlap or exclusion in order to determine just what was and was not purchased.

In Glens Falls Ins. Co. v. McCown, supra, this court held:

"The coverages offered but rejected are in the policy (under the direction of the Insurance Commission) the same as are those offered and accepted, therefore it is proper to consider all of them in determining the respective obligations and rights of the parties to the policy."

In the case at bar, the majority, in construing the sentence in Coverage A saying that "loss caused by * * * flood * * * shall not be deemed loss caused by * * * collision or upset", holds:

"The obvious purpose of this provision was to enlarge the liability of petitioner under Coverage A. * * * * * * * * If petitioner had intended the language used in the last sentence of Coverage A (enlarging its liability under that coverage) to be used also to restrict its liability under Coverage B-1, the same language could have been written into Coverage B-1 as a limitation of liability."

214

The majority requires here that each coverage be defined within its own paragraph. This gives "collision and upset" a meaning different under Coverage A from that in the same policy under Coverage B-1. If I understand the majority correctly, this conflicts with the rule of construction announced in the Glens Falls case that "it is proper to consider all of them (the coverage paragraphs) in determining the respective obligations and rights of the parties". If each coverage must be complete in itself, there would be no occasion to consider coverages not purchased in order to define a coverage purchased, as the court did in the Glens Falls case, supra, and as the court is refusing to do here. The following quotation from the Glens Falls case shows clearly that in that case the court used the words of Coverage F to help define and delimit Coverage E:

"That the damage done to respondent's automobile was caused by a flood cannot be seriously questioned. That Coverage E's protection against external discharge or leakage of water did not include, and was not meant to include, an unprecedented overflow of the Trinity River onto a large portion of the City of Fort Worth is made perfectly clear by reference to Coverage F, which offered to insure respondent not only against external discharge or leakage of water but against flood or rising water as well. Since respondent did not accept and pay for Coverage F, he 'expressly failed to cover the very damage sued for' and cannot recover."

The majority uses the settled rule that a policy is construed liberally in favor of the insured and strictly against the insurer to arrive at the result that the sentence in question enlarged the liability under Coverage A but did not restrict liability under Coverage B-1. The fallacy in this is that the sentence in question is a definition of a term which should be used consistently throughout the entire policy. Here the majority is not construing ambiguous words, but is refusing to apply a definition because that definition is not repeated in paragraph B-1.

The purpose of excluding flood damage from "collision and upset" was to distinguish between two clearly different types of insurable risks in order that the purchaser of insurance might fit his purchase to his need. This is for the convenience of the general public. In order to sell these insurable risks as separate packages, the insurer needs a clear demarcation between them so that a fair and proper premium may be determined from loss experience, and so that an insurer may maintain proper reserves against its outstanding policies. Judicial construction which tends to confuse two such completely different risks as

that commonly thought of as collision with that commonly thought of as flood negatives the desirable objective of separating the risks so that flood insurance and collision insurance can be sold separately.

Restricting the sentence in question to the paragraph on Coverage A opens up overlaps between Coverage B-1 (collision upset) and Coverage C (fire), Coverage D-1 and D-2 (theft), Coverage E (windstorm, earthquake, explosion, hail or water), and Coverage F (combined additional coverage) which do not exist if the sentence be regarded as a general definition, for the sentence is not repeated anywhere else in the policy.

Words in an insurance policy should be given a common and ordinary meaning because these contracts are offered for sale to the public generally. As I understand the majority opinion, a flood which might rise and recede so gently that it exerted no force upon an automobile would not be a collision, but a flood which exerts some degree of force upon an automobile is a collision. I draw this conclusion from the majority's holding "that the force of the floodwaters against the automobile was a collision within the meaning of the language of Coverage B-1." I cannot believe that either the insurer or the insured intended the word *collision* to have such a meaning.

Opinion delivered April 25, 1951.

Motion for rehearing overruled May 30, 1951.