THE CITY COAL & SUPPLY CO., APPELLEE, *v.* AMERICAN AUTOMOBILE INS. CO. ET AL., APPELLANTS.

(No. 3706—Decided November 12, 1954.)

*Messrs. Nadler & Nadler,* for appellee.
*Mr. Oscar A. Stephens,* for appellants.

PHILLIPS, J. The meaning of the word, "upset," as used in a policy of insurance issued by defendant companies to plaintiff corporation on a concrete-mixer truck, owned and operated by .it in its business of selling building supplies and concrete mixed in transit, and damages recoverable under the terms of such policy of insurance under the facts of this case are the questions presented to this court by defendants' appeal on questions of law from the judgment of the Court of Common Pleas, entered upon the finding of a judge thereof (sitting as the trier of fact, by waiver of trial by jury) for plaintiff in the amount of $1,031.50 in its action against defendants to recover for damage to such concrete-mixer truck.

As plaintiff's driver backed the insured vehicle within three feet of a cellar excavation, after unloading about one-half yard of concrete, and was preparing to unload the remainder thereof for the foundation of a house, and while the driver was leaving the cab of such truck, the rear wheels on each side of the rear thereof, and the chute with which the concrete had been and was to be delivered, sank into the side of the excavation and to the bottom thereof, and were buried completely. One of the front wheels was lifted· off the ground about a foot and a half and the other about six inches.

After manual efforts and the use of a wrecker, crane and a tractor were unsuccessful in removing it, the concrete-mixer truck was removed from the excavation the next day by a crane and tractor acting in unison, and towed to plaintiff's supply yard, where the concrete which had hardened in the mixer barrel was removed by plaintiffs at a cost of $72. The truck was

repaired subsequently for $64, and was equipped with two new tires and tubes as replacements for the blown out tires with which it was equipped when it slid into the excavation, at a total expense of $223.19, exclusive of towing and removing, or attempting to remove, the truck from the excavation; all of which, including towing, was done at a cost of $1,031.50.

The provisions of the contract of insurance around which the controversy between the parties revolves are:

"Item 8.

"* * *

"E. Comprehensive loss of or damage to the automobile, except by collision (but including fire, theft and windstorm). To pay for any direct and accidental loss of or damage to the automobile, hereinafter called loss, except loss caused by collision of the automobile with another object or by upset of the automobile or by collision of the automobile with a vehicle to which it is attached."

"Item 10. Insured's duties when loss occurs—coverages D, E-1, E-2 and F. When loss occurs, the insured shall:

"(a) Protect the automobile, whether or not the loss is covered by this policy, and any further loss due to the insured's failure to protect shall not be recoverable under this policy; reasonable expense incurred in affording such protection shall be deemed incurred at the company's request."

"Upset" has been defined oftentimes to mean "to overturn, overthrow, or capsize; as, to *upset* a carriage; to *upset* an argument; to *upset* the situation. * * * Synonym: * * * Overturn." Webster's New International Dictionary, Second Edition.

Plaintiff maintains that "when loss occurs, the insured shall 'protect the automobile, whether or not the loss is covered by this policy, and any further loss due to the insured's failure to protect shall not be recoverable under this policy; reasonable expense incurred in affording such protection shall be deemed incurred at the company's request'"; and that the vehicle did not upset.

Defendants maintain that the vehicle upset and support their conclusion by citation of the following cases:

Where a vehicle loses its equilibrium and the overturning process commences and proceeds beyond the power of those in

charge of the vehicle to stop its progress, the vehicle has "overturned" or "upset" within the meaning of a policy insuring against damage to the vehicle upset or overturning. *Jack* v. *Standard Marine Ins. Co., Ltd.,* 33 Wash. (2d), 265, 205 P. (2d), 351, 8 A. L. R. (2d), 1426.

"Where wheels on right side of truck loaded with fruit sank down to the axle, a distance of two to three feet, in earthen shoulder of highway, causing load to shift its weight, and sideboards of truck were thereby broken and fruit was precipitated to the ground, damage to fruit was caused by 'overturning' of truck within policy providing for payment to insured on insured's liability as private or common carrier for loss or damage to goods caused by 'overturning of the motor truck and/or trailer' * * *."

"Judge Gaston ruled as follows: 'As to the overturning, the degree of overturning has nothing to do with it. A slight overturning is as much an overturning as a complete overturning.'" *Moore* v. *Western Assurance Co. of Toronto, Canada,* 186 S. C., 260, 195 S. E., 558.

"Where automobile was driven down a hill and onto a causeway across a river and there was a splash when automobile hit flood waters and automobile then slid over the causeway or into a chughole in a slanting position and wrecker which attempted to remove automobile could not get it out and the automobile turned over when wrecker turned loose of the automobile, there was a 'collision' or 'upset' within policy insuring owner of automobile for damage caused by collision of automobile with another object or by upset of automobile." *Proffitt* v. *Providence Washington Ins. Co.* (Tex. Civ. App.), 234 S. W. (2d), 894.

Where a trailer bed of a truck was lifted by a hydraulic hoist for the purpose of emptying a load of slag, but only slag on one side of the trailer slid out causing the truck to tip over until it rested on the ground thereby damaging the truck and trailer, "damage was caused by upset of the trailer within the meaning of the policy." *Radella* v. *Bankers Mutual Fire Ins. Co. of Lancaster,* 165 Pa. Super., 633, 70 A. (2d), 407.

Further defendant maintains that "plaintiff did not have a contract for coverage" for "towing and other expenses in re-

moving the mixer truck from the excavation," provision for which is made "under item 8-K, which provides for towing coverage"; that the trial court was in effect writing in the policy issued to the plaintiff coverage which was not extended to plaintiff, "* * * in effect writing a new contract of insurance between the parties, a contract not anticipated at the time the policy was issued to the plaintiff."

"It is the defendant companies' contention that under the law and the facts of this case this mixer truck was out of control and the backward fall into the excavation could not be stopped by the driver. Once the mixer truck was in the excavation it could not be removed by its own power. The front wheels were suspended in the air, the bottom resting flat against the walls of the excavation, the cement chute buried into the ground.

"The mixer truck was upset and the plaintiff was not entitled to payment under Policy No. K-2017782.

"There is another question in this case, that is the measure of damages as applied by the trial court. Assuming for the purpose of this question only that the mixer truck was not upset, what damages are covered?"

Counsel for defendant insurance companies admits that if plaintiff's truck had gone into quick-sand and was entirely submerged to the point that it was impossible to recover then defendants would be liable for the full value of such truck.

It is the contention of defendants' counsel that it should not have to pay to plaintiff the amount required to salvage the truck because the policy did not cover "towing."

However, there is another principle applicable here, and that is that an insured must do everything reasonable to minimize the amount of the loss; and certainly, in this case, what the plaintiff did was for the benefit of the defendant insurer in that it did minimize the loss and relieve the defendants from payment of the full value of the cement mixer which went over the embankment. Having so minimized the loss, we hold that plaintiff was entitled to the amount expended by it for the benefit of the defendant companies in salvaging the cement mixer from the excavation into which it slid.

We have read with interest, care and gratitude the following "list of authorities relating to the question presented" to which our attention was called by the trial judge in his opinion: 5 Insurance Law and Practice—Appleman, 340, Section 3201; 23 A. L. R. (2d), 397, 411-426; 8 A. L. R. (2d), 1433; *Aetna Casualty and Surety Co. v. Cartmel,* 87 Fla., 495, 100 So., 802, 35 A. L. R., 1013; *Mercury Ins. Co. v. McClellan,* 216 Ark., 410, 225 S. W. (2d), 931; *Great American Mutual Indemnity Co. v. Jones,* 111 Ohio St., 84, 144 N. E., 596, 35 A. L. R., 1023; *Ferguson v. Farm Bureau Mutual Ins. Co., Inc.,* 171 Kan., 679, 237 P. (2d), 234; *Radella v. Bankers Mutual Fire Ins. Co. of Lancaster,* 165 Pa. Super., 633, 70 A. (2d), 407; *Proffitt v. Provident Washington Ins. Co.* (Tex. Civ. App.), 234 S. W. (2d), 894; *Jack v. Standard Marine Ins. Co., Ltd.,* 33 Wash. (2d), 265, 205 P. (2d), 351, 8 A. L. R. (2d), 1426; *Guaranty Trust Co. v. Continental Life Ins. Co.,* 159 Wash., 683, 294 P., 585; *Granger v. New Jersey Ins. Co.,* 108 Cal. App., 290, 291 P., 698; *Carl Ingalls, Inc., v. Hartford Fire Ins. Co.,* 137 Cal. App., 741, 31 P. (2d), 414, 416; *New Jersey Ins. Co. v. Young* (C. C. A., 9th), 290 F., 155; *Wetherill v. Williamsburgh City Fire Ins. Co.,* 60 Pa. Super., 37; *Haik v. United States Fidelity and Guaranty Co.,* 15 La. App., 97, 130 So., 118; *Harris v. American Casualty Co. of Reading, Pa.,* 83 N. J. L., 641, 85 A., 194, 44 L. R. A. (N. S.), 70, Ann. Cas. 1914B, 846; *Tinker v. Boston Ins. Co.,* 106 Okla., 206, 233 P., 1058; *St. Paul Fire and Marine Ins. Co. v. American Compounding Co.,* 211 Ala., 593, 100 So., 904, 35 A. L. R., 1018; 5 American Jurisprudence, 790, 817, 908, Sections 507, 557, 753; *Moore v. Western Assurance Co. of Toronto, Canada,* 186 S. C., 260, 195 S. E., 558; *Orlando v. Manhattan Fire and Marine Ins. Co.,* 266 N. Y. App. Div., 319, 42 N. Y. Supp. (2d), 228; *Long v. Royal Ins. Co., Ltd.,* 180 Wash., 360, 40 P. (2d), 132, 105 A. L. R., 1423; 43 Words and Phrases (Cumulative Pocket Part, 1955), 135.

As suggested by the trial judge, some of the listed authorities "seem to hold contrary to the opinion" of the trial court, and this court, that the insured vehicle did not upset when it slid into the cellar excavation, nor while being removed therefrom.

However, in our opinion, the weight of authority of those cases, the cases cited by counsel, and those resulting from independent research, support the conclusion we have reached.

The foregoing conclusion compels consideration of the second question presented; namely, the expenses for which plaintiff is entitled to be reimbursed by the terms of the policy of insurance.

We conclude that under the quoted provision of the policy of insurance identified as (a), the plaintiff is entitled to be reimbursed for the amount of damage to the truck and the amount of money expended in removing the truck from the excavation and protecting it from further injury such as hardening concrete and further damage, which amount the evidence discloses to be the amount returned by the jury.

The judgment of the Court of Common Pleas is affirmed.

*Judgment affirmed.*

GRIFFITH, P. J., and NICHOLS, J., concur.