**DEALERS NATIONAL INSURANCE COMPANY, Appellant,**

v.

**Albert D. SIMMONS, Appellee.**

**No. 25.**

Court of Civil Appeals of Texas.

Houston (14th Dist.).

Nov. 8, 1967.

Rehearing Denied Nov. 29, 1967.

John H. Benckenstein, Benckenstein & Norvell, Beaumont, for appellant.

Newton B. Schwartz, Houston, for appellee.

BARRON, Justice.

Albert D. Simmons, plaintiff in the trial court and appellee here, was an employee of Joe Bailey Martin. Joe Bailey Martin operated a wholesale beer distributing business in Trinity, Texas. He, Martin, also oprated a ranch in Walker County, Texas. Simmons' principle duties were those of a ranch worker; but he did, from time to time, do some work connected with his employer's beer distributing business.

The employer, Martin, carried a workmen's compensation policy with the appellant, defendant in the trial court, for the protection of his workers in the beer distributing business. He also, by way of an endorsement on his workmen's compensation policy, carried voluntary workmen's compensation insurance providing for coverage of his farm, ranch, and other agricultural employees.

On December 25, 1964, Simmons allegedly sustained an injury while driving his employer's truck to the employer's ranch to feed cattle. Simmons filed a claim for workmen's compensation with the Industrial Accident Board seeking the statutory compensation benefits for disabilities resulting from the injuries sustained. From an adverse ruling of the Industrial Accident Board he duly perfected his appeal to the trial court. In the trial court he alleged he was an employee entitled to benefits under the statutory workmen's compensation policy carried by his employer with appellant for the protection of his workers in the beer distributing business. He alleged, alternatively, that he was a ranch hand and entitled to the benefits of the voluntary workmen's compensation insurance carried by his employer in the endorsement upon the statutory policy.

The evidence, when viewed retrospectively, shows rather clearly that Simmons was a farm or ranch employee and was not an

employee in the beer distributorship. After the close of the testimony in the trial court, Simmons abandoned his claim under the statutory policy and sought recovery only under the voluntary coverage. The jury found that he had sustained an accidental injury, as alleged by him, which was a producing cause of total and permanent disability and that he had necessarily incurred reasonable hospital, drug, and medical expenses for the treatment of those injuries in the reasonable amount of $4,270.13. The trial court rendered judgment for the plaintiff in the lump sum of $14,035.00 for his disabilities, together with the amount of the medical expenses found, making a total of $18,305.13. The trial court judgment provided for interest on such sum at the rate of 4% per annum.

From this judgment, Dealer's National Insurance Company, the defendant, has perfected an appeal to this court.

The parties will be referred to as in the trial court.

██ Defendant first contends that the trial court erred in overruling its motion for judgment non obstante veredicto, because plaintiff did not introduce into evidence any special policy covering voluntary compensation protecting ranch workers. The evidence shows, however, that the employer, Martin, was by proper subpoena, requested to produce the policy with the endorsement. He testified at the trial that he had destroyed the policy after its expiration date in April, 1965. Plaintiff also issued similar subpoenas to counsel for the defendant, a Mr. Weyland, owner of Lumberman's Insurance Agency of Lufkin, Texas, and J. C. Hinson, a safety engineer with Lumberman's Insurance Agency, which agency sold the insurance to Martin. A subpoena was issued also to Ken Gates, a company claims adjuster. Furthermore, plaintiff, in his original petition filed in this cause, made demand for production of the policy on May 6, 1965, approximately 21 months prior to the trial of the case on January 30, 1967. This was all to no

avail. Hinson did, however, produce a copy of a "daily" and a copy of the voluntary endorsement, upon which plaintiff relied. Both instruments were introduced in evidence without objection. Mr. Martin, the employer, testified that in 1964, defendant company had issued to him policies of workmen's compensation insurance to cover his ranch workers in addition to the statutory policy; that he paid the premiums therefor, and that after the policy had expired, he destroyed it. He testified that the policy was in full force and effect on December 25, 1964, when Albert Simmons was injured.

We believe that the facts are sufficient to show that the policy was issued and was in effect on the date of the alleged injury, and that the facts are sufficient to show the necessary provisions of the policy, especially of the voluntary compensation endorsement. Commonwealth Casualty Co. v. Coogle, 31 S.W.2d 362 (Tex. Civ.App.), no writ; 37 Tex.Jur.2d, p. 477, Sec. 4.

By its first, second, fourteenth and fifteenth points of error defendant contends that the trial court erred because plaintiff did not satisfy the conditions precedent allegedly contained in the voluntary endorsement, and that there is no evidence to support the trial court's findings in the judgment that plaintiff stood ready and willing to execute the necessary conditions and requirements of paragraph 4 of the voluntary endorsement. Paragraphs four and five of the voluntary endorsement are as follows:

(4) "The benefits payable under coverage C on account of such injury shall be *paid* to such person or persons as would have been entitled thereto under the designated workmen's compensation law, provided, however, that as a condition precedent to any such payment the injured employee * * * shall (1) execute such full and binding release of all claims against the insured and the company on account of such injury or

death as may be required by the company, and (2) assign to the company all claims or judgments or the proceeds thereof which he or they may have or recover against any person who or organization which is or may be liable on account of such injury or death and execute such other documents as the company may require to enable it to enforce such rights or collect such proceeds * * * (5) If any person entitled to payment under coverage C shall *refuse to accept such payment* and to comply with the terms and conditions set forth above *or* if any person shall commence any proceedings at law, in equity or in admiralty, except for such payment, seeking damages from the insured or the company on account of such injury, the company's liability under coverage C with respect to such injury is thereupon terminated." (Emphasis added).

 It will be noted that the so-called conditions precedent contained in paragraph 4 deal with the performance of such conditions prior to *payment* of the policy. In defendant's original answer, filed May 20, 1965, the defendant included a sworn denial that a special policy of workmen's compensation insurance had ever been issued. Defendant contends that plaintiff's failure to use the word "voluntary" justified such position. We do not agree. Moreover, in defendant's first amended original answer, upon which it went to trial, defendant filed a sworn denial of all of plaintiff's allegations, which included plaintiff's claim that the voluntary endorsement was in effect. The defendant made no offer or tender of any *payment* at any time. The trial court in its final judgment recited that the plaintiff stands ready and willing to execute all necessary documents required by paragraph 4 of the endorsement concerning matters of releases and assignments before payment is made. We believe the trial court dealt properly with this matter. Plaintiff could not be expected vainly to deliver to defendant a full release of all claims and make an assignment of his

interest when defendant had continuously denied the existence of such a policy. The insurance company has not ever, so far as the record reflects, even considered making payment. It would be unreasonable to construe paragraph 4 of the voluntary endorsement as a condition precedent to liability of the company under such circumstances without an offer of payment as provided in the endorsement. The endorsement is clear on this point. It is settled law in this State that policies of insurance will be construed liberally in favor of the insured and strictly against the insurer when such construction is reasonable. Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379, 381; 32 Tex.Jur.2d, p. 121, Sec. 60. Defendant's points of error are overruled. The provisions of paragraph 4 of the endorsement must be complied with before payment and not before the filing of suit.

 Defendant further contends that the filing of the statutory workmen's compensation claim terminates defendant's liability under the voluntary policy. Plaintiff did not file a common law action for damages against either the company or the employer, Mr. Martin. We overrule this contention for two reasons. First, the company did insure Mr. Martin against his employees' on-the-job injuries, both under the workmen's compensation law and under a contract of voluntary compensation. Plaintiff had no means of determining whether he was a workman in the beer distributing business or was a ranch worker. He performed both jobs at times. Plaintiff filed suit on both counts. He had the right to do so after it was shown that defendant issued Mr. Martin both types of insurance. Plaintiff was not bound to assert a claim on only one phase of the policy when, in effect, two policies were issued by the company. In Travelers Ins. Co. v. Brown, 402 S.W.2d 500, 502 (Tex.Sup.), the Supreme Court said:

"The contract of insurance between Travelers and Ranch Management, Inc.,

was a contract for the benefit of third persons, unregulated by the Workmen's Compensation Law. The right of Brown to benefits provided in the policy is conferred and limited by the terms of the contract. * * * Section 5 of Coverage C (as in this case) expressly provides that 'if any person shall *commence* any proceeding at law * * * seeking damages from the insured * * * the company's liability under Coverage C * * * is thereupon terminated.' The provision does not allow of an election; it *terminates* the liability of the insurer *if a suit for damages is commenced."* (Parenthesis added).

In Brown, the Supreme Court had before it the question of whether another suit had been *commenced.* In that case a common law action for damages had been filed by Brown, but the suit had been dismissed with prejudice three days before the hearing in the Brown case. The Supreme Court held that the proof did not show that another suit had been commenced and citation served or answer made within the meaning of the policy. The Supreme Court further said that the only purpose of the provision (paragraph 5) was to avoid the necessary expenditure of time and money in preparing to defend a *damage* suit, only to be required thereafter to make compensation payments or to expend further time and money in the defense of a suit in which the issues are entirely different. In the case at bar, the issues were neither different nor would additional time and money be required further to defend a lawsuit. Further compensation payments could not be required. Here the action was essentially, the same. Two types of employment were involved. The only difference in plaintiff's actions was the type of work done by plaintiff; whether he was a ranch worker or a beer truck driver and helper. Coverage existed in one case and did not exist in the other. All of the insurance was included in one policy. The special issues submitted to the jury would have been identical except for the fact that the jury was asked whether Simmons was a ranch laborer for Joe Bailey Martin. He had to be either a ranch laborer or a helper in the beer business. We hold that paragraph 5 above was not violated, and that no additional action was commenced against the company within the meaning of the policy which might result in a double recovery in favor of plaintiff.

■■ Secondly, defendant went to trial on a pleading which did not specifically deny coverage on the ground of the filing of another suit. In its pleading it alleged:

"Further specially answering here, Defendant alleges that the Plaintiff has never unequivocally accepted the benefits of any voluntary compensation policy, released all his possible cause or causes of action for tort, *and performed the conditions precedent upon his part to be performed, and he cannot claim any benefits or compensation thereunder.* (Emphasis added).

This pleading is insufficient to apprise the plaintiff that such defense would be urged. There is nothing in the verified answer claiming an avoidance of the policy by reason of the alleged filing of another suit which is specific enough to raise the defense. It is therefore waived. Rules 54 and 94, Texas Rules of Civil Procedure; Reid v. Associated Employers Lloyds, 164 S.W.2d 584 (Tex.Civ.App.), writ ref.; 45 Tex.Jur. 2d p. 480, Sec. 63. There is nothing in the record to show that this issue was tried by consent.

Defendant complains of the finding of the jury that Albert Simmons sustained a personal injury to his body at the time and place in question and says that such finding is against the great and overwhelming weight and preponderance of the evidence and is not supported by sufficient evidence. We have reviewed the entire record to determine the correctness of these assignments. See Fisher Const. Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126.

Albert Simmons testified that Mr. Martin sent him to the ranch to do some work on the morning of December 25, 1964. He drove through the gate of Mr. Martin's ranch and stopped 30 or 40 feet inside. He walked back to close the gate after stopping the truck in an uphill position. He went back, got into the truck and started the motor. As he started to go forward, the truck jumped and the motor went dead. The truck suddenly started to move backward and the brakes would not hold. As the truck moved backward he looked back to see what was happening, and the truck hit the gate post causing the left door to fly open. As the door opened it suddenly snapped back and struck the plaintiff on the right side of the head above the ear. The blow was hard and it knocked the plaintiff unconscious. He fell to the ground, and plaintiff did not remember anything further for a period of two or three weeks. He was taken by his wife to John Sealy Hospital at Galveston where he remained until March 28, 1965. There were no other witnesses to the accident. Houston McCorley, a postal employee, drove by the ranch, saw plaintiff on the ground, and asked what the trouble was. Plaintiff said he was sick. Plaintiff was rubbing his head and said that he had a terrible headache. He was in a dazed condition. He told McCorley that he got sick feeding the cattle, according to McCorley. McCorley did not see the pickup truck at the gate. Plaintiff did not mention anything to McCorley about a wreck with the pickup. Mr. Martin, the employer, found the pickup truck parked about halfway between the barn and gate, about 300 yards from the gate. There were no signs of damage to the back of the truck or the back bumper according to Martin.

Dr. Cole, a Huntsville physician who treated plaintiff, testified that he doubted that Simmons' statement concerning his injuries was completely reliable. Nevertheless, plaintiff was knocked unconscious by the accident, and the reliability of statements as to what happened made a short time after the injury could not be determined. Dr. Coe, who treated plaintiff at John Sealy Hospital, testified that the blow on Simmons' head resulted in a hematoma, causing temporary or partial paralysis, which apparently cleared up once the mass and the pressure were removed by surgery. He further testified that the accident as described by plaintiff clearly could cause the resulting injury and that he treated plaintiff accordingly. The injury was severe, and plaintiff's brain was damaged to the extent that he suffered permanent abnormality in that area, resulting in psychomotor attacks and probable seizures. His eyes were affected and his mental condition was impaired.

Plaintiff, in our opinion, gave a complete and rather detailed account of the accident occurring on Christmas morning of 1964. The severity of the blow on his head prevented a prompt and accurate report of the incident in detail. The evidence is conflicting and somewhat inconsistent. But we believe the testimony of Albert Simmons is credible, considering the fact that he is an uneducated Negro man who was a faithful servant of Mr. Martin. He never questioned Mr. Martin's orders and was not known to misrepresent facts or violate his trust. We believe the jury in this case was warranted in finding that the plaintiff did sustain an injury to his body on December 25, 1964, and that such finding is amply supported by the testimony. Such a finding is exclusively within the province of the jury, and this Court's duty is to permit the finding to stand if possible. The evidence is sufficient. In re King's Estate, 150 Tex. 662, 244 S.W.2d 660.

We overrule defendant's contention that reversible error was committed by the trial court in failing to give the instructions set out in new Rule 226a, effective January 1, 1967. The instructions were clearly given to the jury as required by the Rule so far as the written charge is concerned. But apparently the trial court

overlooked giving the remaining instructions, including the oral admonitions. No objection was made to his omission until defendant's motion for new trial was filed. The error is waived by failure to timely complain of same. Barron v. State, 378 S.W.2d 144 (Tex.Civ.App.), no writ; Strickland v. City of Friona, 294 S.W.2d 254, 258 (Tex.Civ.App.), writ ref., n. r. e.; Rule 434, T.R.C.P. While compliance with Rule 226a is important, we do not believe a party had the right to remain silent, and after judgment is entered against it, claim reversible error by such omission.

Error is claimed by reason of jury misconduct. The jury deliberated more than three hours. Complaint is made that one of the jurors gave an example by comparison of a relative's reactions to a type of epilepsy, about which Dr. Cole had testified generally. The statement consumed about two or three minutes. Another juror at a different time stated that he would not hire plaintiff on a job. Another juror stated that the hospitalization insurance form signed by Dr. Cole was not valid unless the doctor had a duplicate to back it up and that the juror had filled out one for her maid and the doctor's signature was on the form. While the statements by jurors above were improper, we believe they can be considered merely passing remarks and do not constitute reversible error. They were mere statements during deliberation and no further comment was made concerning them. The foreman repeatedly read the charge to the jurors and stated that they just consider only the evidence in the case. Defendant offered the testimony of only six of the jurors and one of them did not hear any of the statements. In the case at bar we are not confronted with any violations by the jurors regarding their personal experiences. Neither are we confronted with facts concerning what the jurors had heard others say.

 Under Rule 327, a party seeking a new trial because of misconduct of a juror has the burden of establishing to the satisfaction of the court that it reasonably appears from the evidence both on the hearing of the motion and the trial of the case, and from the record as a whole, that injury probably resulted to him. St. Louis Southwestern Ry. Co. v. Gregory, 387 S.W.2d 27 (Tex.Sup.). Casual improper remarks made by jurors during deliberation are harmless where there is no evidence that the jurors related these remarks to the case before them. Spear v. Central Distributing Co., 384 S.W.2d 180 (Tex.Civ.App.), writ ref., n. r. e.; Sims v. McKnight, October 11, 1967, 14th Court of Civil Appeals, 420 S.W.2d 173; Baird's Bread Co. v. Hearn, 300 S.W.2d 646 (Tex.Sup.). We do not believe that the above brief statements, considering the length of the deliberations and the entire record in this case, resulted in any probable injury to defendant. We therefore overrule these points of error.

 Defendant complains that the trial court erred in rendering judgment for plaintiff in the amount of $14,035.00 and in failing to allow defendant a discount of four percent compounded annually as provided by Article 8306, Sec. 15 and Article 8306a. We sustain this point. The Workmen's Compensation Law applies insofar as interest is concerned. The judgment of the trial court is reformed to provide for a discount on $14,035.00 for timely payment at four (4%) percent, compounded annually.

The judgment of the trial court, as reformed, is affirmed.

### On Motion for Rehearing

On motion for rehearing, Dealers National Insurance Company, appellant, complains of our statement in the opinion herein that appellant in his first amended original answer filed a sworn pleading denying all of appellee's allegations. After re-examining the pleadings, we find that the appellant is correct.

While appellant attached an oath to the first amended original answer filed by it, it limited the oath to Sections II and III, pages 1–2 thereof, not material here, and did not extend its verifications to all of the allegations. Appellant denied that the voluntary endorsement was in effect, but it was not denied under oath in the amended answer. We accordingly correct any reference to verifications in the amended answer.

Remaining convinced that this case was correctly decided we overrule appellant's motion for rehearing with the above corrections.

It is so ordered.