PARKER PRODUCTS, INC., Appellant,

v.

GULF INSURANCE COMPANY, Appellee.

No. 17343.

Court of Civil Appeals of Texas,
Fort Worth.

Oct. 20, 1972.

Rehearing Denied Nov. 17, 1972.

Wynn, Irby, Brown, McConnico & Mack, and Tom Renfro, Fort Worth, for appellant.

Brown, Crowley, Simon & Pebbles, and M. Hendricks Brown, Fort Worth, for appellee.

OPINION

LANGDON, Justice.

This is a suit on a products liability insurance policy. The appellant, Parker, manufactures candy flavoring mixes. A customer made a claim against Parker, based on the latter's defective products. Parker notified Gulf Insurance and requested it to handle the claim. Gulf Insurance denied coverage. Parker then entered into a settlement agreement with the customer, and filed this suit against Gulf Insurance Company, the appellee, contending that Gulf Insurance should have handled the claim under the terms of the products liability coverage.

Both Parker and Gulf Insurance filed motions for summary judgment. Gulf Insurance based its motion for summary judgment on two separate policy provisions.

First, Paragraph 5 under the Conditions, provides that:

"No action shall lie against the company unless, as a condition precedent thereto, there shall have been full compliance with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company."

Second, Exclusion (n) provides that the insurance coverage does not apply to:

" . . . (n) to damages claimed for the withdrawal, inspection, repair, replace-ment, or loss of use of the named insured's products or work completed by or for the named insured or of any property of which such products or work form a part, if such products, work or property are withdrawn from the market or from use because of any known or suspected defect or deficiency therein; . . . ."

Parker's motion was based upon its contention that neither the condition nor the exclusionary clause affected its right to recover under the terms of the products liability policy.

The judgment sustaining the motion for summary judgment, filed by the defendant, Gulf Insurance Company, and overruling the motion for summary judgment filed by the plaintiff, Parker Products, Inc., was rendered and signed on February 25, 1972. The judgment in part recites that: " . . having considered the motion filed by Defendant and the motion filed for Plaintiff, and argument of counsel, and it being the opinion of the Court that . . . there is no genuine issue as to any material fact disputed in this case, and that Plaintiff is not entitled to recover herein, that Plaintiff's claim being expressly excluded from coverage by reason of Exclusion '(n)' as contained in the endorsement attached to such policy affording products liability coverage.

"The Defendant had also contended that it was entitled to a summary judgment based upon the provisions contained in Paragraph 5 of Conditions concerning 'Action Against Company'.

"Plaintiff has also filed its Motion for Summary Judgment contending that it is entitled to judgment for $6,481.77 plus a reasonable attorney's fee."

In appealing from the summary judgment of the court the appellant, by its first point, asserts that the court erred in holding that the appellee would not be liable unless there is either a judgment against the insured after a trial or by written agreement of the insurance company. (Para-

graph 5 of Conditions pertaining to "Action Against Company.")

"The general rule is that 'an insurer who denied liability on the grounds that the claim was not covered by the policy was liable for the insured's settlement before suit when the claim was found to have been within the policy coverage.' Annotation 67 A.L.R.2d, pp. 1086, 1088; United States Fidelity & Guaranty Co. v. Pressler, Tex. Civ.App., 185 S.W. 326 error dism. This rule is effective even though the insurer offers to defend the suit and the offer is refused. Great American Indemnity Co. v. City of Corpus Christi, Tex.Civ.App., 192 S.W.2d 917, ref. n. r. e. Defendant has waived the provisions of the policy on which it relies, providing: 'the insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense' and:

"'* * * no action shall lie against the company unless as a condition precedent thereto the insured shall have fully complied with all of the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by agreement between the claimant and the company.'" Travelers Indemnity Co. v. Equipment Rental Co., 345 S.W.2d 831 (Houston, Tex.Civ.App., 1961, ref. n. r. e.). See also Southwestern Fire & Casualty Company v. Bendel, 321 S.W.2d 183 (Dallas Tex.Civ. App., 1959, no writ hist.) and Womack v. Allstate Insurance Company, 156 Tex. 467, 296 S.W.2d 233 (1956).

"Where a liability insurer denies liability for a claim asserted against the insured and refuses to defend an action therefor, it is generally held that the insured is released from a provision of the policy against settlement of claims without the insurer's consent, and from a provision making the liability of the insurer dependent on the obtaining of a judgment against the insured; and that under such circumstances, the insured may make a reasonable compromise or settlement without los-

ing his right to recover on the policy." 142 A.L.R. 812, "Anno.—Liability Insurance— Compromise by Insured." The Texas case of United States Fidelity & Guaranty Co. v. Pressler, 185 S.W. 326 (Texarkana Tex. Civ.App., 1916, dism.) is cited under this annotation. See also 49 A.L.R.2d 694, Section 22; 142 A.L.R. 809; and 34 A.L.R. 730, and the cases cited under each.

Appellant's first point is sustained.

■ By its second point Parker contends that the court erred in holding as a matter of law that the exclusionary clause (n) prevents appellant from recovering under the policy in question.

In considering and discussing the exclusionary clause (n) we will begin by examining the following excerpt from the brief filed by the appellee. We have inserted the italicized numbers one (1) through eight (8) in the excerpt. "(1) Appellant is apparently endeavoring to contend that the exclusion may cover the insured's own products which it had for some reason found necessary to withdraw from the sale or the market. (2) It must be remembered that the liability policy and the products liability policy were written for the purpose of indemnifying the insured against claims made by other people. (3) It certainly could not be contended that the purpose of this insurance or of insurance generally would cover any product which the insured itself had withdrawn from the market. (4) Exclusion (n) clearly and unambiguously and distinctly provides that Gulf Insurance Company would not be liable for the '(1) withdrawal . . . (2) replacement, or (3) of any property of which such products (insured Parker's products) form a part if such . . . property (of Parker's customer) is withdrawn from the market or from use because of any known or suspected defect or deficiency therein'. (5) Parker's customer in California had used Parker's candy mix which contained paper and was not fit for consumption in the manufacture of ice cream and such customer did withdraw

such ice cream from the market and did not market the same and did make a claim for a 'replacement' of 'property of which such products (of Parker's) formed a part thereof'. (*6*) This was the claim made against Parker, which claim Parker paid and which Parker endeavored to get Gulf to pay under its products liability policy. . . . (*7*) Appellant contends that the candy flavoring is the only product manufactured by Parker, but the exclusion clearly meant to exclude property of which Parker Products formed a part thereof if such property was *withdrawn from the* market. (*8*) Parker had a claim made against it for the replacement of the ice cream of which its candy mix was a part as well as because its customer had not put into the trade and had consequently withdrawn from its customers and its market the ice cream containing Parker's adulterated mix."

We will discuss the portions of the excerpt which we have numbered one (*1*) through eight (*8*) in the order of the italicized numbers.

(*1*) We do not consider this case as one wherein the appellant contends that exclusion (n) would cover any of its products which for some reason it found necessary to withdraw from sale or the market.

As we view the case the appellant did not withdraw any of its products from the market.

(*2*) Appellant, the insured, initiated this cause of action on the basis that the policy was written for the purpose of indemnifying it against a claim made by other people.

Its customer, Associated Dairy Products Company of California, Inc., made such a claim as was contemplated by the policy.

(*3*) There is no contention that the insurance would cover any product withdrawn from the market by the insured itself. See discussion above in No. (*1*) to the same effect.

(*4*) In our opinion Exclusion (n) clearly and distinctly provides that the insur-

ance policy in question does not apply to damages claimed (by the insured) for its withdrawal, inspection, repair, replacement, or loss of use of its, the named insured, products or work completed by or for the named insured or to damages claimed by the insured to any of its property of which such products or work (completed by or for the named insured) form a part, if such products, work or property (completed by or for the named insured) are withdrawn from the market or from use because of any known or suspected defect or deficiency therein.

Stated another way, it is our opinion that the exclusionary clause (n) clearly and distinctly provides that the insurance does not apply to: (1) damages claimed by the named insured because of the named insured's withdrawal, inspection, repair, replacement, or loss of use of the named insured's products or work completed by or for the named insured, or (2) to damages claimed by the named insured because of the named insured's withdrawal, inspection, repair, replacement or loss of use of any of its property of which such products or work, completed by or for the named insured, form a part, if such products work or property, completed by or for the named insured, are withdrawn from the market or from use by the named insured because of any known or suspected defect or deficiency therein.

Parker, the appellant, has not in this cause of action made any claim for damages because of its withdrawal, inspection, repair, replacement or loss of use of its products or work completed by or for Parker, the named insured.

Parker, the appellant, in this cause of action has not made any claim for damages based upon its withdrawal, inspection, repair, replacement, or loss of use of any of its property of which such products or works, completed by or for the named insured (appellant), form a part.

Such products, work or property, completed by or for the named insured (appel-

lant) were not withdrawn from the market or from use by the named insured because of any known or suspected defect or deficiency therein.

In our examination of this record we are unable to find any information, based upon fact or fiction, to show that Parker withdrew any product, work or property made by or for him from the market. The California customer did not make or produce any product or property for the appellant. The ice cream produced by the customer was not made by or for Parker.

(5) Parker's customer in California did use the Parker mix containing paper in the production of its ice cream. It did not market the ice cream. It made a claim against Parker. This is the basis of the cause of action.

(6) This is correct. See (5) above.

(7) It is undisputed that the candy flavoring mix is the only product manufactured by Parker. The Exclusion (n) meant to exclude only such loss of use of the insured's property of which such products or work, completed by or for the named insured (appellant) form a part.

(8) Parker had a claim made against it because of its defective candy flavoring mix which was sold to and used by its California customer. The claim was for damages to the customer because of its purchase and use of the appellant's defective candy flavoring mix.

The policy in question pertains only to the conduct of Parker, the insured. As previously stated Parker has not asserted any claim for damages for withdrawal of any of its products or of any of its property of which such products or work completed by or for the appellant form a part.

This concludes our discussion of the numbered portions of the excerpt from the appellee's brief.

Apparently the exclusionary clause (n) is relatively new because neither Parker nor Gulf Insurance cited any authority interpreting it. Since the attorneys in this cause, the trial Judge and the members of this Court are in disagreement as to the meaning of the exclusionary clause (n) we reluctantly concede the possibility that its meaning is ambiguous. If it is ambiguous then we must resort to the general rules applicable to construing provisions contained in insurance policies.

It is a well established rule that ambiguous contracts are to be liberally construed in favor of the insured and strictly against the insurer. Continental Cas. Co. v. Warren, 152 Tex. 164, 254 S.W.2d 762 (1953); Providence Washington Ins. Co. v. Proffitt, 150 Tex. 207, 239 S.W.2d 379 (1951).

When there is more than one reasonable construction of an insurance clause, the insured's construction, if reasonable, will prevail. United States Fidelity & Guaranty Co. v. Bimco Iron & Metal Corp., 464 S.W.2d 353 (Tex.Sup.1971).

Also in the Bimco case, the Court interpreted an ambiguous clause in favor of the insured for the additional reason that failure to so interpret: ". . . would require this Court to give full effect to the exclusionary clause and to ignore the insuring clause."

An examination of other portions of the insurance contract reflect that:

" 'completed operations hazard' includes . . . property damage arising out of operations or reliance upon a representation or warranty made at any time with respect thereto, but only if the . . . property damage occurs after such operations have been completed or abandoned and occurs away from premises owned by or rented to the named insured. 'Operations' include materials, parts or equipment furnished in connection therewith. Opera-

tions shall be deemed completed at the earliest of the following times:

"(1) *when all operations to be performed by or on behalf of the named insured* under the contract have been completed,

"(2) *when all operations to be performed by or on behalf of the named insured at the site of the operations* have been completed,

. . .

" 'named insured's products' means goods or products manufactured, sold, handled or distributed by the named insured or by others trading under his name, . . .

" 'occurrence' means an accident, including injurious exposure to conditions, which results, during the policy period, in . . . *property damage neither expected nor intended from the standpoint of the insured*;

" 'policy territory' means:

"(1) the United States of America, its territories or possessions, or Canada, or

. . .

"(3) anywhere in the world with respect to . . . *property damage arising out of a product which was sold for use or consumption within the territory described* in paragraph (1) above, provided the original suit for such damages is brought within such territory;

" 'products hazard' includes . . . property damage arising out of the named insured's products or reliance upon a representation or warranty made at any time with respect thereto, but only *if* the . . . *property damage occurs away from premises owned by or rented to the named insured and after physical possession of such products has been relinquished to others*;
. . . . ." (Emphasis supplied.)

The candy flavoring is the only product manufactured by Parker. Its only "market" is ice cream manufacturers. There is a separate and distinct premium in the product's liability policy providing for

property damage coverage. The only kind of damage which could result in property loss due to defective candy flavoring mix would be precisely the kind of loss and damage which occurred in the instant case. By Gulf's construction of the exclusionary clause, Parker was paying a premium for protection against a risk that was excluded.

This case does not present a situation in which Parker, made aware of the defect in its mix by an employee or another customer, seeks to withdraw the mix which it has shipped to its customers before such customers have put it to use. In the case at bar its first notice is from a customer who has used the defective mix and sustained damage by such use. The damage occurred away from premises owned by or rented to Parker and after physical possession of such products had been relinquished to its customer. All operations to be performed by or on behalf of the named insured had been completed. See 43 Am. Jur.2d 329, "(b.) Rule of Liberal Construction in Favor of Insured," Section 271.

We sustain appellant's second point of error.

■ By its third point Parker asserts the trial court erred in failing to sustain its motion for summary judgment and in failing to enter judgment for it in the amount of $6,481.77.

The defendant, Gulf Insurance Company, in response to demands for admission under Rule 169, Texas Rules of Civil Procedure, admitted that the amount of the settlement, $6,481.77, represented the minimum amount and did not include lost profits and other items of costs. However, there are no stipulations or admissions to the effect that the amount paid in settlement is reasonable. Whether or not it is reasonable raises a question of fact.

In Tobin v. Garcia, 159 Tex. 58, 316 S.W. 2d 396, 400 (1958) it was held that:

"If the only order in the trial court is one overruling a motion for summary judgment, then that order is interlocutory and

no appeal will lie therefrom. But when, as in this case, both parties file motions for summary judgment and one such motion is granted, then the trial court's judgment becomes final and appealable, and on appeal the Court of Civil Appeals should determine all questions presented. If reversible error is found, the court should render such judgment as the trial court should have rendered, Rule 434, . . . "

The judgment of the trial court is reversed.

Judgment is here rendered that Paragraph 5 of the Conditions concerning "Action Against Company" and Exclusion (n) have no application to the facts of this cause and Parker is therefore entitled to recover.

That portion of the cause of action relating to the determination of reasonable attorney's fees to be allowed Parker in connection with its settlement of the claim with its customer and the question concerning the reasonableness of the amount paid in settlement of the claim is remanded to the trial court for determination.

MASSEY, C. J., dissents.

MASSEY, Chief Justice (dissenting).

I believe the majority to have erred in its interpretation of that exclusionary clause which the trial court held to have precluded recovery.

I deem the provisions of the exclusionary clause unambiguous in and of itself. If I believed it was ambiguous and subject to construction I would agree with the majority opinion. I also deem unambiguous the entire policy, considered with and as encompassing the provisions of the exclusionary clause. If I believed it possible through such a broadened consideration to hold such ambiguous and subject to construction I would agree with the majority opinion.

Since I can perceive neither patent nor latent ambiguity I would affirm the judgment of the trial court.