Beaty A. SPEAR, Appellant,

v.

**CENTRAL DISTRIBUTING COMPANY,**
Appellee.

No. 14287.

Court of Civil Appeals of Texas.

San Antonio.

Oct. 28, 1964.

Rehearing Denied Nov. 25, 1964.

Leon P. Howell, San Antonio, for appellant.

Groce, Hebdon, Fahey & Smith, San Antonio, for appellee.

BARROW, Justice.

This is a damage suit. Appellant, Beaty A. Spear, a building contractor, brought this suit against appellee, Central Distributing Company, a wholesale appliance dealer, to recover for personal injuries sustained in a fall from a balcony in appellee's warehouse. Although the jury made findings of primary negligence and damages favorable to appellant, a take-nothing judgment was entered upon the jury's findings of contributory negligence proximately causing the fall.

Appellant presents forty-eight points which may be summarized and discussed under five general complaints: there is no evidence to support the jury's findings of contributory negligence or, in any event, these findings are so contrary to the great weight and preponderance of the evidence as to be wrong; the jury committed several

acts of misconduct; there are irreconcilable conflicts in the jury findings; the trial court erred in refusing to submit other requested issues of primary negligence; and the trial court improperly excluded some of appellant's medical evidence.

The jury found primary negligence against appellee in failing to warn appellant about the non-weight bearing surface located in part of the balcony, but convicted appellant of contributory negligence in failing to keep a proper lookout for his own safety, in stepping on what he should have known was a non-weight bearing surface and in stepping between the 2 x 4 floor joists. Each of these findings of negligence was found to be a proximate cause of the accident.

The principal finding on this appeal is that of improper lookout, in that appellant concedes that many of his asserted errors are made harmless if this finding stands. Appellant urges, however, that the only evidence on this issue is his own testimony that he did not see the sheetrock ceiling before he stepped on it, and could not do so because of the poor lighting, as well as the obstructions created by a heavy layer of dirt on the sheetrock and the position of cartons of merchandise in the balcony.

There was a dispute as to whether appellee knew that appellant was going to the balcony, and the jury found that he was both an "invitee" and a "licensee." This conflict is immaterial on the question of his lookout, in that as an invitee he was required to exercise ordinary care for his own safety. Triangle Motors of Dallas v. Richmond, 152 Tex. 354, 258 S.W.2d 60, 1953; Renfro Drug Co. v. Lewis, 149 Tex. 507, 235 S.W.2d 609, 23 A.L.R.2d 1114, 1950; Blanks v. Southland Hotel, 149 Tex. 139, 229 S.W.2d 357, 1950; Watts v. Dallas Ry. & Terminal Co., Tex.Civ.App., 279 S.W.2d 400, writ ref. n. r. e.

A full review of the facts and circumstances relating to the lookout issue is necessary. Prior to May 31, 1962, appellant had purchased a kitchen cabinet and vented hood from appellee for a home he was constructing. The hood was not delivered as promised by this date and appellant went to the office of appellee just before noon and obtained same. On returning to the construction site, appellant learned that the hood would not fit properly in the cabinet and that a back damper and elbows were needed to properly install the hood. About 3:00 p. m. he returned to appellee's place of business to secure these missing items. He contacted Anthony Dudik, assistant manager of appellee, who learned from the warehouseman that the elbows were probably stored in the balcony of a warehouse across the street from appellee's principal place of business. Appellant accompanied Dudik to the warehouse where the injury occurred.

The physical surroundings where the fall occurred are important considerations bearing upon appellant's lookout. It was obvious to appellant that this warehouse, and particularly the balcony, was not a show room. The warehouse had formerly been used by an automobile dealer for assembling cars and had been acquired by appellee a few months before for storage space. It had a rough and unfinished interior. The balcony, which was over part of the first floor, was reached by means of a ladder-type stairs. Appellant testified that the whole balcony was a mess. It was cut up into four different levels and merchandise was lying haphazardly around same. The lighting, which the jury found was adequate, was supplied by means of a double skylight over the center of the balcony. A few feet to the east of the stairway entrance was a row of 2 x 4 studs, about 16 inches apart, on which had formerly been built a partition wall. East of same was a wooden catwalk 3'7" wide and elevated 16" above the balcony floor. After entering the balcony Dudik went into a storeroom north of the stairway. Appellant, unknown to Dudik, started to the east to look in boxes in that direction. He went

through the partition studs onto the catwalk and found a box with elbows in it. He called to Dudik, who looked out the north storage area and saw appellant about to step from the wooden catwalk to what looked like a dry ceiling. Dudik shouted a warning, but appellant was already stepping upon the sheetrock.

It is thus seen that Dudik, although about ten or twelve feet away, could see the danger. Further, appellant testified that there were many foot prints on the wooden catwalk, but none on the sheetrock. The sheetrock was nailed under the floor joists and appellant testified that, as a builder, he knew non-weight bearing materials are nailed to the bottom of floor joists. Several photographs were introduced in evidence and the jury could properly conclude from them that appellant could have seen the sheetrock if he had looked. On cross-examination appellant testified that he usually looked where he was going, however, he admitted: "Q. I ask you, did you look where you were stepping at point 5? (where he stepped on sheetrock) A. I just don't know."

■ Ordinarily, whether or not a party has kept a proper lookout is a question for the jury. Lynch v. Ricketts, 158 Tex. 487, 314 S.W.2d 273, 1958; Texas & Pac. Ry. Co. v. Day, 145 Tex. 277, 197 S.W.2d 332, 1946; Arrington v. Paschall, Tex.Civ.App., 352 S.W.2d 866, writ ref. n. r. e.; Locke v. J. H. Marks Trucking Co., Tex.Civ.App., 318 S.W.2d 1, no writ hist. The applicable rule is stated in Lynch v. Ricketts, supra: "In a case of this character, standards of ordinary care such as the direction and extent of the observation which Mrs. Ricketts should have made at any particular time cannot be fixed with any degree of certainty but must be left in large measure to the trier of fact. It is well settled, moreover, that negligence and causation, like any other ultimate fact, may be established by circumstantial as well as direct evidence. See English v. Miller, Tex.Civ. App., 43 S.W.2d 642 (wr. ref.); Henry

v. Publix Theatres Corp., Tex.Civ.App., 25 S.W.2d 695 (wr. ref.). The jury is thus not only the judge of the facts and circumstances proven but may also draw reasonable inferences and deductions from the evidence adduced before it. Its findings may not be disregarded under the provisions of Rule 301 (T.R.C.P.), therefore, if the record discloses any evidence of probative value which, with inferences that may be properly drawn therefrom, will reasonably support the same."

■ It is our opinion that the testimony of appellant and Dudik, and the reasonable inferences to be drawn therefrom, together with the physical facts as shown by the photographs, are sufficient to raise the issue of improper lookout by appellant on the occasion in question. Further, the finding on this issue, as well as the causal connection issue submitted therewith, is not against the great weight of the evidence. This conclusion is reached from an examination of the entire record and by applying the test stated in Re King's Estate, 150 Tex. 662, 224 S.W.2d 660, 1951; See also, Calvert, No Evidence and Insufficient Evidence, Points of Error, 38 Tex.Law Rev. 361.

This finding of contributory negligence which was a proximate cause of appellant's fall supports the take-nothing judgment and it is therefore unnecessary to discuss the other contributory negligence findings.

Appellant asserted several acts of jury misconduct in his motion for new trial and by this appeal. They are: a juror, Morales, told other jurors that the government paid just $10,000 when a soldier was killed; a juror, Creek, told the jury that his family received just $10,000 or $12,500 from the insurance carrier for the Transit Company when his mother was killed; several jurors discussed and speculated as to whether appellant had any connection with a whiskey bottle shown in one of the photos admitted in evidence; at least two jurors erroneously concluded that the sheetrock portion of the balcony floor was on a different level from the wooden catwalk; the jurors discussed

whether appellant had hospitalization insurance; the jurors agreed in advance to answer damage Issue No. 24 (future medical expenses) by adding Issues No. 22 (pain, mental anguish and loss of earnings) and No. 23 (past medical expense); and, the foreman slept while some of the deposition evidence was being offered by appellant.

A party asserting misconduct of the jury has the burden of proving (1) that misconduct occurred (2) which was material, and from the evidence, both on the hearing of the motion and the trial of the case, and from the record as a whole, (3) that injury probably resulted to the complaining party. Rule 327, Texas Rules of Civil Procedure; Willis v. Goodrum, Tex. Civ.App., 360 S.W.2d 182, writ ref. n. r. e.

Appellant and six jurors testified at the hearing on the motion for new trial. At the conclusion of same, the trial court found that several of the above acts had occurred, but that appellant had failed to show that probable injury had resulted from any of the acts of misconduct. We concur in this conclusion.

The trial court found that Morales and Creek made the statements relating to other claims. These statements were made in a brief discussion of a minute or minute and a half before the jury commenced their deliberations. Of the six jurors who testified, one did not hear the remark by Morales, and all were confused as to what Creek said. It is clear from all six, however, that these remarks occurred in a very casual manner and the jurors did not relate these remarks in any manner to this case. Appellant has failed to demonstrate that these remarks probably resulted in harm to him and therefore they are harmless. Mrs. Baird's Bread Company v. Hearn, 157 Tex. 159, 300 S.W.2d 646, 1957.

An empty whiskey bottle is shown in one of the photographs which was introduced into evidence without objection. There was no testimony, however, showing that it had any connection with the case. The trial court found that the whiskey bottle was mentioned in connection with the discussion of appellant's lookout. He further found that one of the jurors stated that they could not consider the bottle as it was not mentioned in evidence and there was no further speculation concerning same. Five of the six jurors who testified did not recall any discussion relating Spear to the whiskey bottle. The photographs were received in evidence without objection and, being properly in evidence, the jury was entitled to consider them as well as any other evidence. Erroneous deductions drawn from the evidence is not misconduct. See Pope, the Mental Operation of Jurors, 40 Tex.Law Rev. 849, 855. In any event, probable harm was not shown by this statement which was promptly rebuked.

Photographs were introduced in evidence purporting to show the balcony and particularly the area where appellant fell. These pictures were properly discussed by the jury during their deliberations on appellant's lookout. The trial court found that at least two jurors erroneously concluded that the sheetrock portion of the balcony was on a different level than the wooden catwalk. This was not misconduct. Juror's deductions from the evidence, though faulty, illogical, arbitrary, or bizzare, do not constitute misconduct. Trousdale v. Texas & N. O. R. Co., Tex. Civ.App., 264 S.W.2d 489, aff. 154 Tex. 231, 276 S.W.2d 242, 1955; Akers v. Epperson, 141 Tex. 189, 171 S.W.2d 483, 1943; Pope, The Mental Operation of Jurors, supra.

The trial court found that four of the six jurors who testified on motion for new trial heard one or more jurors state during the deliberations on the damage issues that appellant probably had hospitalization insurance. This was improper, but probable harm is not shown. The jurors awarded all past medical expenses claimed by appellant and substantially more future medical expenses than pleaded by appellant.

This improper statement was made after the jury had made the findings of contributory negligence. Neither is probable harm shown by the jury's agreement made after answering the contributory negligence issues concerning the amount to be found in answer to Issue No. 24. Certainly, appellant was not harmed by this excessive answer.

The trial court found that the foreman "did not go to sleep to the extent that he did not hear such evidence." Thus no misconduct was established and this fact finding of the trial court is final under this record. Dickey v. Travelers Ins. Co., Tex. Civ.App., 356 S.W.2d 156, writ ref. n. r. e.

■ Appellant does not urge any conflicts in the jury findings which are in irreconcilable conflict with the finding that appellant did not keep a proper lookout. The asserted conflicts are therefore immaterial. Under the applicable rule laid down in Little Rock Furniture Mfg. Co. v. Dunn, 148 Tex. 197, 222 S.W.2d 985, 1949, it is essential that appellant be able to point out that one of the conflicting answers of the jury, in connection with the rest of the verdict except the issue with which it conflicts, necessarily requires the entry of a judgment different from that which the court has entered. See also: Bay Petroleum Corp. v. Crumpler, Tex., 372 S.W.2d 318, 1963. The take-nothing judgment is supported by the jury finding of improper lookout and appellant does not show any conflict with or impairment of this finding. Other conflicting findings would be immaterial.

■ Appellant's points relative to the refusal to submit requested special issues inquiring about additional acts of primary negligence and asserted improper exclusion of some of appellant's medical evidence have been considered by us. The jury made findings which established primary negligence against appellee and none of the requested issues would impair the contributory negligence finding of improper

lookout. The damage issues, although found favorable to appellant, were immaterial in view of the take-nothing judgment being properly entered. Prejudicial error is therefore not asserted by any of these points and they are overruled. Rule 434, T.R.C.P.

The judgment is affirmed.