Curtis Pat ARMSTRONG, Appellant,

v.

W. W. CALLAN, Appellee.

No. 5178.

Court of Civil Appeals of Texas,
Waco.

Sept. 21, 1972.

Rehearing Denied Oct. 5, 1972.

Dan A. Makowsky, Waco, for appellant.

W. E. Cureton, Waco, for appellee.

## OPINION

JAMES, Justice.

This case involves jury misconduct. Plaintiff-Appellant Curtis Pat Armstrong sued Defendant-Appellee W. W. Callan for personal injuries to his back growing out of an accident alleged to have occurred on July 15, 1969. Trial was had to a jury which answered all special issues in favor of Defendant Callan, pursuant to which the trial court entered judgment in favor of Defendant. We affirm.

Plaintiff Armstrong was forty-two years of age at the time of trial. For most of his adult life he had worked as a heavy equipment operator and a truck driver. He was in the Army from 1946 until 1955, during which service he drove and operated tanks, half-tracks and trucks which hauled heavy equipment. In 1952 he got his back injured in Korea, when the truck he was driving hit a land mine. However, he recovered from this and continued his military service until 1955. After his military service, he worked mainly as a truck driver and bulldozer operator, for different employers. In 1966 he had surgery on his back in the Veterans Administration Hospital in Dallas, Texas, from which he testified he recovered and thereafter led a normal working life until the accident in question.

Plaintiff Armstrong went to work for Defendant Callan on or about March 15, 1969 as a bulldozer operator on Callan's ranch. Armstrong drove and operated a 1959 Model D-7 Caterpillar bulldozer furnished by Callan from the time he went to work for Callan until the time of his alleged accident of July 15, 1969, about four months after he began working for Callan. The bulldozer upon which Armstrong claims to be injured is the same one that he had operated for the four month period. Callan owned a ranch of about 6000 acres, and Armstrong lived with his family in a house furnished by Callan on the ranch. Armstrong worked a work week of about fifty-five hours, and was paid $2.00 per hour for his services. His duties consisted mainly of cleaning out brush, laying down creek banks, and preparing surface tanks on the ranch, except in bad weather when he worked in the shop located on the ranch.

Armstrong testified: that about 7 A.M. of July 15, 1969, he first started up the motor of this bulldozer as he was accustomed to do, before climbing upon and mounting the seat of the machine; that there was a heavy dew upon the ground;

that there is on either side of the bulldozer a round pushrod or push bar running from about the center of the bulldozer forward to the blade which is in front of the bulldozer; that this pushrod is about two feet above the ground; that the top side of the track is about 2½ feet above the pushrod; that he usually mounted the seat by first stepping up on the pushrod and then to the track and from there to the seat; that on the morning in question he stepped up on the push bar with his left foot, and when he started to come up with his right foot, his left foot slipped on the pushrod, causing him to spin around and fall backwards against the track, hitting it with his back. He did not experience much pain at the time and worked all that day.

Armstrong further testified that the next morning he went to the office and tried to contact the foreman, but the foreman was not in. Someone (not identified in the record) asked him why he was stooped and limping, to which Armstrong replied that he slipped and fell on the bulldozer. This was all that was said, whereupon Armstrong went back to work and worked for three more weeks, after which on August 5, 1969 he went to the Veterans Administration Hospital in Dallas, Texas. He there received treatment and medication for a month, until September 5, 1969. Plaintiff testified that he had been unable to work since his release from the V A Hospital, and that he has been required to take a great deal of medicine to relieve his pain and suffering.

The Defendant offered proof that at some time prior to July 15, 1969, the date of the alleged accident, that he had a metal handle welded upon the side of the bulldozer for safety purposes that could be caught hold of by the driver while standing on the ground, and before stepping up on the pushrod to mount the seat; however, the Plaintiff never offered any testimony that he ever used the handle at the time of the accident or at any other time. The Defendant also offered testimony that the pushrod in question was not round but rectangular in shape, being six inches wide and eight inches vertically.

The trial court submitted ten special issues to the jury, to which the jury made the following disposition:

1. Failed to find that the failure of Defendant Callan to place abrasive material on the pushrod of the bulldozer was negligence.

2. No answer, and none necessary, to the proximate cause issue.

3. Failed to find that Defendant Callan failed to maintain the bulldozer pushrod in the condition that a person using ordinary care would have so maintained.

4. No answer, and none necessary, to the proximate cause issue.

5. To the damage issue, which included past and future pain and suffering, past lost earnings, and loss of future earning capacity, the jury answered "None."

6. To the damage issue which included past medical and hospital care, the jury answered "None."

7. To the damage issue which included future medical and hospital care, the jury answered "None."

8. That the condition of the pushrod on the bulldozer at the time and place in question was open, visible and obvious to Plaintiff Armstrong.

9. The Plaintiff Armstrong knew and appreciated the danger of stepping on the pushrod in question.

10. That Plaintiff Armstrong knew and assumed the risk of stepping on the pushrod in question.

Pursuant to the jury verdict the trial court entered judgment that the Plaintiff take nothing, from which Plaintiff-Appellant comes to this court on two points of error. Both points involve asserted jury misconduct as follows:

1. That one of the jurors (a Mr. Lovecky) inserted his special knowledge into the case; and

2. That the jury concerned itself with the effect of its answers.

In the hearing on the motion for new trial, Plaintiff offered the testimony of two women jurors, Julia Vaughn and Sybil Roberts. The Defendant offered the testimony of the jury foreman, Charles R. McCoy.

Mrs. Vaughn testified that after the foreman had been elected, and at the beginning of the jury's deliberations, and prior to the jury's voting on any special issue, she said she wanted to ask a question of "someone here that knows about tractors;" that a Mr. Steve Lovecky was a member of the jury who was a farmer at West, Texas; that she knew from the voir dire examination of the jury that he was a farmer, owned a tractor, and knew something about tractors. She asked him if he used any abrasive material on his tractor in order to prevent slipping and falling when getting on and off his tractor, to which Mr. Lovecky replied that he did not. He further stated that even if he did put abrasive material on his tractor that after a rain the abrasive material would get muddy and would not prevent a person from slipping. Mrs. Vaughn testified that Mr. Lovecky's statements contributed to her answering Special Issue No. 1 in Defendant's favor, but didn't cause her to decide this way altogether. In the latter part of her testimony, on redirect examination, Mrs. Vaughn stated that the "scales" in her mind were already "tipped" in the Defendant's favor on Special Issue No. 1 before Mr. Lovecky's remarks, but that she asked him the question just to be more sure. The jury spent the largest portion of their deliberations in their discussion of Special Issue No. 1, which inquired whether the Defendant's failure to place abrasive material on the pushrod was negligence.

After the remarks of Mr. Lovecky, the jury voted unanimously on Special Issue No. 1 in favor of the Defendant, and likewise voted unanimously on the remaining issues. She acknowledged on cross-examination that she voted the way she did on Special Issues 8, 9 and 10 because she thought these answers were true. These issues last referred to are the "open, visible and obvious", the "plaintiff knew and appreciated the danger", and "assumed risk" issues all of which the jury answered in favor of the Defendant.

Mrs. Roberts testified about the same as Mrs. Vaughn regarding what Mr. Lovecky's remarks were, and in addition Mrs. Roberts testified that Mr. Lovecky said there was no state law requiring abrasive material on a bulldozer or a tractor. She said that before Mr. Lovecky made these remarks, she was in favor of finding the Defendant negligent because of his failure to put abrasive material on the pushrod; but that she changed her mind after Mr. Lovecky's remarks. She said the jury foreman told the other jurors that Special Issue No. 1 was the main issue, and if they found the Defendant not negligent that the jury would not have to answer the rest of the issues; that they could just answer the damage issues "none" because the plaintiff would not get the money anyway. On cross-examination Mrs. Roberts acknowledged that Issues 8, 9 and 10 were answered correctly by the jury, as Mrs. Vaughn had done.

As above stated, the Defendant put the jury foreman on the stand, who flatly denied that he said anything to the effect that if they answered Issue No. 1 in favor of the Defendant that it didn't make any difference how the rest of the issues were answered. He further denied telling the other jurors anything to the effect that the Plaintiff wouldn't get any money anyway because of the way they had answered the first four issues, and he further stated that he did not hear anyone else make such a statement during the deliberations.

The foreman further testified that the jury was never convinced that the accident in question ever occurred at all; that this was the consensus of the entire jury, and that the jury took up each issue in order and answered each issue unanimously.

■ Under Rule 327, Texas Rules of Civil Procedure, the Plaintiff herein is required to show, in order to obtain a new trial on the ground of jury misconduct that: (a) the misconduct complained of in fact occurred, (b) it was material, and (c) it was calculated to and probably did result in harm to him. Crawford v. Detering Co. (1951), 150 Tex. 140, 237 S.W.2d 615.

■ Whether or nor misconduct occurred is a question of fact; however, if it is established as having occurred, the question of probable harm is a question of law for the courts; and in determining this matter we are bound to examine the entire record as a whole. City of Houston v. Quinones (1944), 142 Tex. 282, 177 S.W.2d 259; Motley v. Mielsch (1947), 145 Tex. 557, 200 S.W.2d 622.

■ The term "record as a whole" has been broadly construed to include any and all parts of the record which may throw light on the question of injury. The term includes matters disclosed by the evidence heard on the main trial as well as the motion for new trial. Motley v. Mielsch supra. A consideration of the state of the evidence on the main trial has been held as a basis for treating jury misconduct as immaterial. In evaluating probable harm, the preponderance of the evidence may be considered. Fountain v. Ferguson (Sup.Ct.1969), 441 S.W.2d 506.

Aside from the state of the evidence, the jury found by their answers to Special Issues 8, 9, and 10 that the condition of the pushrod on the bulldozer at the time and place in question was open, visible and obvious to the plaintiff; that the plaintiff knew and appreciated the danger of stepping on the pushrod; and that he knew and assumed the risk of stepping on the pushrod.

■ Under the doctrine of assumed risk, and on the basis of the maxim, volenti non fit injuria, it is the rule that one who voluntarily exposes himself or his property to a known and appreciated dan-ger due to the negligence of another may not recover for injuries sustained thereby. The doctrine of assumed risk applies in a master-servant relationship. Wood v. Kane Boiler Works, Inc. (1951), 150 Tex. 191, 238 S.W.2d 172.

■ The requirements for the doctrine of volenti non fit injuria to apply have been declared by our Supreme Court to be: (1.) the plaintiff have knowledge of facts constituting a dangerous condition or activity; (2.) he knows the condition or activity is dangerous; (3.) he appreciates the nature or extent of the danger; and (4.) he voluntarily exposes himself to this danger. J. and W. Corporation v. Ball (Sup. Ct.1967) 414 S.W.2d 143; Halepeska v. Callihan Interests, Inc. (Sup.Ct.1963) 371 S.W.2d 368; Howard v. Jackson Electric Cooperative, Inc. (Waco, Tex.Civ.App. 1968) 430 S.W.2d 689, error refused NRE.

■ Here, Plaintiff-Appellant Armstrong was an experienced bulldozer operator. He had operated the same identical bulldozer for four months on a fulltime basis prior to the accident in question. By his own testimony he had gotten on and off this bulldozer many times prior to the accident in question. The evidence and record as a whole amply support the jury's findings to Special Issues 8, 9, and 10, the "assumed risk" issues. Even the two women jurors who testified about the asserted jury misconduct, said they believed the jury's answers to Issues 8, 9, and 10 were correct. They were the only two jurors who ever at any time differed from the other ten jurors, and their only difference from the others were on Special Issue No. 1, or at the outside Issues 1 through 4, the primary negligence issues.

Assuming that Mr. Lovecky's remarks were improper and constituted jury misconduct, it was material only to the first four issues, that is, on the question of Defendant Callan's negligence. It had no bearing on Issues 8, 9, and 10, the "assumed risk" issues, by the testimony of the

only two jurors who claimed to be influenced by any improper remarks in the jury room.

With particular reference to Appellant's second point, that the jury concerned itself with the effect of their answers, the testimony offered by the plaintiff in the hearing on motion for new trial was refuted and denied by the testimony of the jury foreman. In this event, where there is a conflict in the evidence, it became the duty of the trial court to resolve this conflict. This the trial court did by his implied finding that this asserted misconduct did not occur.

We have carefully examined the entire record in this case, as we are bound to do, and have determined that any jury misconduct that may have occurred did not result in any probable injury to the Plaintiff, within the meaning of Rule 327, TRCP.

Judgment of the trial court is accordingly affirmed.

Affirmed.