Juan Oscar ROSALES, Appellant,

v.

ARGONAUT SOUTHWEST INSURANCE COMPANY, Appellee.

No. 15791.

Court of Civil Appeals of Texas, San Antonio.

May 11, 1977.

Rehearing Denied June 8, 1977.

Donald J. Walheim, San Antonio, for appellant.

Kenneth L. Clark, Clark, Thornton & Summers, San Antonio, for appellee.

BARROW, Chief Justice.

Appellant has appealed from a judgment entered on a jury verdict whereby he recovered 25 weeks of total temporary incapacity and 116 weeks of partial temporary incapacity in his suit brought under the Texas Workmen's Compensation Act. Appellant asserts under his single point of error that the trial court erred in overruling his motion for a new trial because of jury misconduct during the jury's deliberations.

Appellant injured his back on April 11, 1974 while lifting a heavy container in the course of his employment for Industrial Disposal Service. He testified that he felt something pop in his back and has suffered pain since that time. Appellant has not worked since the injury and he testified that he has intense pain in his low back which radiates down his left leg.

The extent of appellant's disability was hotly contested and the medical testimony is sharply conflicting. Dr. Bilderback, an orthopedic surgeon, testified on behalf of appellant. He first saw appellant about three weeks after the injury, and appellant had been under his treatment for nearly two years by the time of the trial. His diagnosis was that appellant had sustained a compression fracture at L–4 with nerve root irritation associated with soft disc herniation. Dr. Bilderback expressed the opinion that appellant would never be able to do heavy manual labor although appellant could return to light duty which the doctor classified as 40 percent of appellant's activity.

Dr. Arredondo examined appellant twice at the request of appellee and testified in its behalf. He examined appellant on October 2, 1974 and again about a year later. It was his opinion that appellant could return to work at any time. One of the principal facts in dispute was whether the compression fracture of L–4 was caused by the injury of April 11, as believed by Dr. Bilderback, or pre-existed this incident. Dr. Arredondo was of the opinion that the compression fracture existed prior to the trauma sustained on April 11 in that the x-rays demonstrate an old fracture. Dr. Modders, a radiologist, had examined the x-rays taken on April 12, 1974 on behalf of the physician who treated appellant shortly after the accident. Dr. Modders testified that in his opinion the compression fracture was due to an old injury.

Appellant asserts that the jurors committed two overt acts of misconduct during their deliberations. Two jurors testified at the hearing of appellant's motion for a new trial, but the misconduct is based solely on the testimony of juror Ernesto Carreon. Mr. Carreon, who was the only dissenting juror to the verdict, testified that two improper statements were made by jurors during the jury's consideration of the question of total disability. He testified that a juror said that appellant would go to Mexico and the taxpayers would be paying for him while he was over there enjoying the money. This juror said the taxpayers would have to pay appellant's benefits. In response to the trial judge's question, Mr. Carreon said he knew the suit was against an insurance company, but he thought that the jurors believed the taxpayers might be

involved because the appellant was sick and would receive unemployment compensation.

Mr. Carreon also testified that a lady juror told another lady juror that although she had a bad back, she could still lift mail bags. The only other juror to testify was Ray Phipps, who testified that the statement about appellant going off to Mexico to spend the money "could have been said, I don't know."

■ A party asserting misconduct of the jury has the burden of proving (1) that the misconduct occurred; (2) which was material, and from the evidence, both on the hearing of the motion and the trial of the case, and from the record as a whole; (3) that injury probably resulted to the complaining party. Rule 327, Tex.R.Civ.P.; *Fountain v. Ferguson*, 441 S.W.2d 506 (Tex.1969); Pope, *Jury Misconduct and Harm*, XII Baylor L.Rev. 355 (1960).

■ The trial court's order overruling the motion for new trial impliedly found that misconduct did not occur since it contained no express finding of misconduct. *Fountain v. Ferguson, supra; Brawley v. Bowen*, 387 S.W.2d 383 (Tex.1965). Appellant urges, however, that the uncontradicted testimony of juror Carreon establishes that the misconduct was material and probably resulted in injury to appellant. *Cf. Barrington v. Duncan*, 140 Tex. 510, 169 S.W.2d 462 (1943). This contention overlooks the proposition that Carreon dissented from the jury verdict which was agreed upon by the other eleven jurors. The trial court was entitled to take Carreon's advocacy into consideration in weighing his credibility. Although juror Phipps did not expressly deny that a statement was made regarding liability of the taxpayers, his failure to recall that such a statement was made is some evidence that the statement was either not made or, in any event, was of slight significance in the jurors' deliberations.

■ Appellant, a Mexican National testified that he had returned to Mexico on a prior occasion after he had worked about six months in San Antonio and that he lived off his earnings for over a year. Thus, the jury could properly consider that appellant might return to Mexico after the case was settled. Obviously, the taxpayers had nothing to do with this case and we fail to see how the jurors could seriously bring them into the case. However, if the jurors were concerned about the possibility of appellant receiving unemployment benefits from the taxpayers, as stated by Carreon, such statement would probably be harmful to appellee and not appellant. The jurors would likely prefer to place the liability on appellee rather than on the taxpayers. In any event, it is well settled that the jurors' deductions from the evidence, though faulty, illogical, arbitrary, or bizarre, do not constitute misconduct. *Trousdale v. Texas & N.O.R. Co.*, 264 S.W.2d 489 (Tex.Civ.App. —San Antonio 1953), aff'd, 154 Tex. 231, 276 S.W.2d 242 (1955); *Spear v. Central Distributing Co.*, 384 S.W.2d 180 (Tex.Civ. App.—San Antonio 1964, writ ref'd n. r. e.); Pope, *The Mental Operations of Jurors*, 40 Texas L.Rev. 849, 855 (1962).

■ It was misconduct for the lady juror to mention her own personal experiences relative to the disability she suffered from her back injury. It does not appear that this statement was of any significance in the jurors' deliberations in that Carreon testified that the lady to whom the statement was made laughed in response. Almost all of the testimony related to the question of appellant's disability, and the conflicting medical evidence made the jurors' job a difficult one. The jurors deliberated over this evidence for about two and one half hours before returning their verdict. There is no showing that the verdict was not the result of a sincere attempt by the jurors to answer the issues from the evidence in accordance with the instructions of the trial court.

We conclude from an examination of the record in this case, including the testimony given at the hearing of the motion for new trial, that the trial court did not err in overruling appellant's motion for new trial.

The judgment is affirmed.

**514**

CADENA, Justice, dissenting.

The uncontradicted testimony is that at a time when five jurors had voted to answer the issue in question in favor of plaintiff, one of the jurors stated that plaintiff would go to Mexico and there enjoy the money which "us taxpayers would be paying for him while he was over there." Despite an admonition, the juror persisted in advancing this argument for about 45 minutes and the jury finally voted 11–1 against plaintiff on the issue in question.

There is nothing in the record to indicate that the juror advancing this argument against answering the issue favorably to plaintiff was referring to unemployment compensation. The statement was clearly to the effect that if the issue were answered in favor of plaintiff, the taxpayers would have to pay for it. Carreon, the juror who testified concerning the statement, said, "I guess they believed it was to be unemployment compensation . . . ." At best this is the surmise of the witness, attempting to determine the relevancy of the remark concerning the burden of taxpayers, concerning the mental processes of other members of the jury. He stated that unemployment compensation was the "only check" he could think of.

The testimony of the only other juror who testified, Phipps, in no way contradicts the testimony of Carreon. He testified that he did not remember, because of the time involved, whether the statement relating to burden on the taxpayers was made or not. He stated, "it could have been said," adding that he could not "say 'yes' or 'no' definitely." He did not say that if the statement had been made he would have remembered it. In the absence of such evidence, it can hardly be argued that his failure to remember the statement is "not made," particularly in view of his admission that the statement could have been made. Nor does his lack of recollection imply that the statement, if made, was "of slight significance." "I can't remember" is not the equivalent of "it didn't happen," particularly in view of the added statement, "it could have been said," and in the absence of a claim by the witness that if it had happened he would remember it.

This case does not involve "faulty, illogical, arbitrary, or bizarre" deductions from the evidence. It involves simply a statement, finding no support in the evidence, concerning the onus which would be placed on the backs of the jurors, as taxpayers, if the issue were answered favorably to plaintiff. It clearly was intended to induce the jurors to focus their attention on the effect of the verdict on their own financial wellbeing, rather than on drawing inferences from any part of the testimony.

The contention that the statement, if made, would result in prejudice to the insurance company rather than to the plaintiff is unpersuasive. A statement to the effect that an affirmative answer to an issue would result in a heavier tax burden on the jurors is hardly an argument in favor of answering the issue "yes" in order to assume such additional burden. It is not easy to believe that after it was pointed out that an affirmative answer would result in a burden to taxpayers, four jurors changed their vote from "no" to "yes." The discussion of the effect of the verdict on the jurors as taxpayers did not involve an analysis of any testimony by a witness from the witness stand. The discussion concerned itself solely with "testimony" by a juror. The fact that the juror's "testimony" was incorrect is beside the point.