Frank H. BRUNSTETTER et ux., Mary B. Brunstetter, Appellants,

v.

Bill SOUTHERN and Bill Southern and Associates, Inc., et al., Appellees.

No. 16510.

Court of Civil Appeals of Texas, San Antonio.

May 20, 1981.

Rehearing Denied July 1, 1981.

**558**

Thomas Rocha, Jr., San Antonio, for appellants.

James L. Drought, San Antonio, for appellees.

KLINGEMAN, Justice.

This is a deceptive trade practice suit involving the sale of a house. Frank H. Brunstetter and wife, Mary B. Brunstetter (Brunstetters), sued Bill Southern and Bill Southern & Associates, Inc. (Southern), for damages caused by the alleged flooding of plaintiffs' house. Plaintiffs contend that Southern unlawfully failed to disclose the existence of a claimed structural defect in the house which caused the house to flood when it rains, and that defendants had a duty to inform them of such defect and failed to do so. Southern counterclaimed for attorney's fees, alleging that the Brunstetters' suit was groundless and brought in bad faith and for purposes of harassment. Trial was to a jury whose verdict was adverse to the Brunstetters on all aspects of liability and in favor of Southern on his counterclaim. The district court found that the Brunstetters' suit was groundless and rendered judgment for Southern upon his counterclaim and against Brunstetters on their claim. Brunstetters' motion for a new trial based primarily on jury misconduct was overruled, and the Brunstetters appealed.

The Hurns bought the house which is the subject of this suit when it was new. The house never flooded while they were living in it. They subsequently moved out of state, and listed the house for sale with Southern as realtor in March, 1976. The multiple listing agreement between the Hurns and Southern stated there were no latent structural defects in the house. Around May 8, 1976, while the house was still vacant, Southern noticed that water had flooded the family room of the house during a rainstorm. He inspected the house for leaks but found none and concluded the flooding was caused by some debris which had collected above a retaining wall, causing a damming effect. Southern removed the debris and decided that the problem was thereby alleviated. Southern telephoned the Hurns to report the flooding. The Hurns told Southern this had never happened before. Southern told the Hurns that there had been a very severe thunderstorm and some debris had collected around the house and altered the flow of the water around the house. The Hurns and Southern concluded that there was nothing wrong with the house. The Brunstetters purchased the home in February, 1977, but were not told that the house had flooded in May, 1976. The house again flooded on November 1, 1977. The Brunstetters did not notify Southern of the flooding problem, but consulted an engineer, T. S. Graham, Jr., for a proposed solution. Mr. Graham concluded that the problem was caused by the yard landscaping, the lack of a good exit path and a solid board fence impeding rainfall runoff. Mr. Graham suggested cutting an opening at the bottom of the board fence, removing vegetation, cutting a swale in the ground surface and installing a drainage channel. Mr. Graham further suggested that an investigation of the entry path into the house interior should be conducted. The Brunstetters were not satisfied with Mr. Graham's report; therefore, they hired another engineer, Harvey R. Livesay, Jr. Mr. Livesay examined the house to determine how the water entered and concluded that a construction defect on a corner of the house was responsible for the flooding of the house. Mr. Livesay suggested the problem be solved by waterproofing the wall and making some land-

scaping changes in the yard. A contractor was then hired to make such suggested changes.

By thirteen points of error, the Brunstetters basically complain that the trial court erred (a) in failing to render judgment for plaintiffs on their claim against Southern; (b) in failing to find defendant is not entitled to recover on his counterclaim; and (c) in failing to grant appellant a new trial because of jury misconduct. In this opinion, we will generally discuss such points of error under these three areas.

### PLAINTIFFS' CLAIM FOR DAMAGES

■ By one point of error plaintiffs complain that the trial court erred in failing to render judgment for plaintiffs. The gist of plaintiffs' contention is that they were consumers who purchased goods that were defective; that defendant violated the Deceptive Trade Practices Act; that plaintiffs suffered actual damages of at least $1,639.95, and were therefore entitled to treble the amount for the actual damages plus court costs and attorney's fees.

We have concluded that the trial court properly held that plaintiffs were not entitled to recover on their claims for damages under the Deceptive Trade Practices Act because (a) plaintiffs had, prior to trial, received in settlement more than three times their actual damages; and (b) the jury's answers to special issues holding adversely to plaintiffs on all liability issues are sufficiently supported by the evidence.[1]

The Brunstetters' suit was originally against the Hurns (the sellers of the property), Southern (the listing broker) and Howard Tate, Inc. (the cooperating broker), jointly and severally, for damages occasioned by the leaking of water in the house sold by the Hurns to the Brunstetters. The Brunstetters sought to ground liability against all parties upon an alleged fraudulent concealment of a latent structural defect in the house.

Prior to trial, the Brunstetters settled their claim against the Hurns for $4,000.00 and their claim against Tate, the cooperating broker, for $1,000.00, for a total of $5,000.00 paid to them in satisfaction of their claim.

The total amount of the Brunstetters' actual damages, as found by the jury, was $1,639.95. The Brunstetters do not challenge this finding.

Based upon the foregoing, and disregarding everything else, the "credit rule," as it exists in Texas, conclusively bars the Brunstetters from any recovery upon their claim against Southern simply because they have had a full satisfaction of their claim and are entitled to but one satisfaction of it.

The proper rule is set forth in *McMullen v. Coleman*, 135 S.W.2d 776 (Tex.Civ.App.—Waco 1940, no writ), as follows:

There are two reasons why we think the record presents reversible error. In the first place, we think the trial court should have credited the amount found by the jury as being adequate compensation to plaintiffs with the amount previously received by plaintiffs in the settlement with [the co-defendant]. While in Texas a settlement with and release of one of two alleged joint tort-feasors does not release the other, [citation omitted], the amount received from one of them must be credited on the loss suffered by the injured party, and the amount of the recovery against the other reduced proportionately. This rule prevails even though it be found that the one released was in fact not liable. The holding is based on the principle that the injured party is entitled to but one satisfaction for a single injury.

---

1. The jury found that (a) defendant's failure to disclose to plaintiffs that the house had leaked water on May 7, 1976, was not made with intent to deceive plaintiffs; (b) the failure of defendant to reveal to plaintiffs any latent defect, if any, was not a misrepresentation of an existing condition; (c) plaintiffs had suffered damages as a result of defendant's failure to reveal subject defect; (d) the reasonable and necessary expenses incurred by plaintiffs in correcting the damages which resulted from water leaking into their house was $1,639.95; (e) plaintiffs should be awarded no money as exemplary damages; and (f) defendant's attorney is entitled to no attorney's fees.

*Id.* at 778. *See also Gill v. United States,* 429 F.2d 1072 (5th Cir. 1970); *Sweep v. Learjet Corp.,* 412 F.2d 457 (5th Cir. 1969); *Petco Corp. v. Plummer,* 392 S.W.2d 163 (Tex.Civ.App.—Dallas 1965, writ ref'd n. r. e.).

■ While it is true that the unity of release rule is no longer followed in Texas, it is still recognized that a claimant is not entitled to recover more than the amount required for full satisfaction of his damages. *McMillen v. Klingensmith,* 467 S.W.2d 193 (Tex.1971).

It is undisputed that plaintiffs' actual damages did not exceed the amount received in settlement from the Hurns and Tate. The jury in this case found that plaintiffs had suffered damages of $1,639.95. They have received $5,000.00 in settlement from the Hurns and Tate. This is more than three times the amount of actual damages found by the jury. The credit rule precludes plaintiffs' recovery against Southern.

### DEFENDANT'S COUNTERCLAIM

By a number of points of error plaintiffs assert (1) that the trial court erred in failing to find that Southern is not entitled to recover on his counterclaim; (2) that the trial court erred in submitting a special issue to the jury whether plaintiffs' action was groundless; (3) that there is no evidence to sustain the jury's affirmative findings to such issue; (4) that the jury's finding was against the great weight and preponderance of the evidence; and (5) that defendant is not entitled to recover attorney's fees.

Defendant asserts that there is ample evidence in the record that plaintiffs' purposes in these proceedings was not to be made whole in respect to the damage they suffered but to strike out and punish the defendant; that plaintiffs proceeded against Southern basically not to recover their damages but to damage Southern for the wrong they felt had been done to them; that plaintiffs gave defendant no notice of their damages or intent to sue and no opportunity to cure; that plaintiffs insisted on prosecuting their suit despite offers to pay them the full amount of the damages and expenses, including reasonable attorney's fees, and continued prosecuting their suit despite the fact that they had been fully and adequately compensated.

The Deceptive Trade Practices Act § 17.-50(c) allows recovery by defendant of attorney's fees and costs where the court finds an action was groundless and brought in bad faith or for purposes of harassment. We have found no cases which are particularly helpful in suits involving such section.

In the instant case the following special issue was submitted to the jury and answered as follows:

Issue No. 10:

Do you find from a preponderance of the evidence that the action brought by Frank and Mary Brunstetter under the Texas Deceptive Trade Practices Act against Defendant Southern was groundless and brought in bad faith or for the purposes of harassment?

Answer 'We do' or 'We do not.'

Answer: '*We do.*'

It is somewhat unclear how the section 17.50(c) issue should be determined. In *Bray v. Curtis,* 544 S.W.2d 816 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n. r. e.), the jury found that a deceptive trade practice act was not groundless or brought for the purpose of harassment; however, in *O'Shea v. International Business Machines Corporation,* 578 S.W.2d 844 (Tex.Civ.App. —Houston [1st Dist.] 1979, writ ref'd n. r. e.), the court found that "groundless" is an issue to be determined by the court, whereas "bad faith" or "for the purpose of harassment" is an issue for the jury.

In the first judgment signed by the trial court on December 5, 1979, the court found that on the basis of the jury verdict, the plaintiffs should take nothing and the defendant should recover on his counterclaim against plaintiffs for reasonable attorney's fees. In the second judgment signed by the trial judge on January 3, 1980, the court made the same basic finding but added: "The Court, furthermore, based upon such

testimony, evidence and argument of counsel, finds that Plaintiffs' action was groundless and was brought and prosecuted in bad faith and for the purpose of harassment."

■ We do not see how plaintiffs were harmed in any manner by the submission of the "groundlessness" issue to the jury. If it was error to submit special issue number ten to the jury, such error was cured by the corrected judgment which was signed within 30 days of the original judgment in which the judge made the finding.

■ As hereinbefore indicated, we have found no cases which set forth any particular guidelines for determining when a suit is groundless and brought in bad faith or for purpose of harassment.

A recent law review article stated that the defendant who tries to prove a suit was instituted in bad faith or for the purpose of harassment

"will probably be required to prove that the consumer's claim was motivated by a malicious or discriminatory purpose. Personal ill will or spite on the part of the consumer toward the defendant is relevant to the issue of malice, although ill will is not a prerequisite to a finding of malice. Even if no ill will existed between the parties, the defendant may be able to show that the consumer was motivated by a reckless disregard for the defendant's rights. In such cases, malice may be inferred from proof that the consumer did not have a good faith belief that there was a basis for his claim."

Goodfriend & Lynn, *Of White Knights and Black Knights: An Analysis of the 1979 Amendments to the Texas Deceptive Trade Practices Act*, 33 S.W.L.J. 941, 988 (1979).

Southern testified in some detail as to his efforts to settle or negotiate with plaintiffs. He stated that suit was brought against him without any knowledge on his part that plaintiffs had a problem, and that the first

he knew about any problem was when he was served in the lawsuit. He testified that after he was served with a copy of plaintiffs' petition, he offered to correct the damages. He also stated he made an offer in writing within 30 days after the suit was filed to correct the problems. He testified that he thought the suit was groundless and in bad faith for purposes of harassment because plaintiffs gave him no opportunity to cure the defect. He also testified of various money offers that he had made to plaintiffs.

Mr. Brunstetter, one of the plaintiffs, testified of his dissatisfaction with the flooding and of his belief that Southern had intended to deceive him. He stated that he did not notify Southern about any flooding and that he saw no reason to notify him because Southern already knew about it. Brunstetter testified that in addition to his actual damages occasioned by the repairs that he had made to the house that he was also seeking mental anguish damages and exemplary damages and that his attorney be fully compensated for his services. He testified that there is no question that $1,800 was a sufficient amount to pay him for everything that was wrong with the house and that he had been paid $5,000. He stated that he instituted legal action without notice. He testified that he settled with Tate for $1,000 because he thought he was the least culpable of the three defendants and that he settled with the Hurns for $4,000 because they were more guilty and culpable. He has sold the house and no longer lives in Texas.

It is undisputed that appellants' actual damages did not exceed the amount that they received in settlement from the Hurns and Tate. The amounts sued for against Southern were essentially for attorney's fees, recovery for mental anguish, and for exemplary damages based on fraud.[2]

2. Appellants' case was originally for damages for mental anguish also; however, it has since been held that damages for mental anguish are not recoverable under the Deceptive Trade Practices Act. *Dennis Weaver Chevrolet, Inc. v. Chadwick*, 575 S.W.2d 619 (Tex.Civ.App.—Beaumont 1979, writ ref'd n. r. e.). Further,

damages for mental anguish are rarely granted in Texas in absence of physical injury. *See id.* at 621, note 2 and cases cited therein. Appellant also alleged fraud on the part of defendants; however, the jury refused to so find and appellants do not complain of such refusal.

Plaintiffs would be entitled to recover attorney's fees in relation to the Deceptive Trade Practices claim only if they were found entitled to recover on their cause of action. *Reiger v. DeWylf*, 566 S.W.2d 47 (Tex.Civ.App.—Beaumont 1978, writ ref'd n. r. e.); *Burnett v. James*, 564 S.W.2d 407 (Tex.Civ.App.—Dallas 1978, writ dism'd); *Cordrey v. Armstrong*, 553 S.W.2d 798 (Tex. Civ.App.—Beaumont 1977, no writ). However, they could not have recovered on their cause of action because they had already received full satisfaction of their damages by settling with the Hurns and Tate.

We hold that the evidence sufficiently supported the findings that the suit was groundless and brought in bad faith or for the purpose of harassment.

### JURY MISCONDUCT

By several points of error plaintiffs complain that the court erred in denying their motion for new trial on grounds of jury misconduct. Plaintiffs assert four areas of jury misconduct: (1) that insurance had been mentioned; (2) that "attempts to settle" were discussed; (3) that comparisons were made of the relevant wealth of the parties; and (4) that there was a decision to "discourage plaintiffs' appeal by denying attorney's fees."

We have carefully examined the record and find no merit in such contentions. The trial court made a number of findings of fact pertaining to jury misconduct, all of which were adverse to plaintiffs' contentions.

In order for a new trial to be granted on the basis of jury conduct, there must be a finding of misconduct and also an injury which probably resulted to the complaining party. Rule 327, Tex.R.Civ.P. (Vernon 1980). Whether or not jury misconduct actually occurred is a question of fact for the trial court. *Cook v. Chapa*, 492 S.W.2d 339 (Tex.Civ.App.—Amarillo 1973, writ dism'd) and cases therein cited. If the evidence offered at the hearing for motion for new trial is conflicting as to whether or not misconduct occurred, the decision of the trial court on the question is binding on appeal. *Brawley v. Bowen*, 387 S.W.2d 383 (Tex.1965); *Maryland Casualty Co. v. Hearks*, 144 Tex. 317, 190 S.W.2d 62 (1945); *Barrington v. Duncan*, 140 Tex. 510, 169 S.W.2d 462 (1943); *Armstrong v. Callan*, 485 S.W.2d 350 (Tex.Civ.App.—Waco 1972, writ ref'd n. r. e.); *Spear v. Central Distributing Co.*, 384 S.W.2d 180 (Tex.Civ.App.—San Antonio 1965, writ ref'd n. r. e.). We have carefully examined the record. A number of jurors testified that such misconduct did not occur. The evidence at best was conflicting, contradictory and uncertain as to the matters of jury misconduct presented by the Brunstetters. The trial court found that misconduct did not occur.

All of plaintiffs' points of error pertaining to jury misconduct are overruled.

We have considered and reviewed all of appellants' points of error and all are overruled. The judgment of the trial court is affirmed.