TOWN LAKE V LIC 



IN THE COURT OF APPEALS, THIRD DISTRICT OF TEXAS,



AT AUSTIN




 






NO. 3-91-563-CV






TOWN LAKE JOINT VENTURE, RON MULLEN AND JOSEPH E. THOMPSON,



 APPELLANTS


vs.





LUMBERMEN'S INVESTMENT CORPORATION,



 APPELLEE





 




FROM THE DISTRICT COURT OF TRAVIS COUNTY, 331ST JUDICIAL DISTRICT



NO. 405,692, HONORABLE PAUL R. DAVIS, JR., JUDGE PRESIDING



 





 Appellant Town Lake Joint Venture ("Town Lake") filed suit against appellee
Lumbermen's Investment Corporation ("LIC"), alleging breach of contract and numerous other
claims. LIC then filed a claim against appellants Ron Mullen, Joseph E. Thompson, and Town
Lake to recover the deficiency on two promissory notes. The trial court directed a verdict in
favor of LIC on its claims against appellants and offset the resulting damages with the damages
the jury awarded Town Lake on its claims of negligent misrepresentation and promissory estoppel. 
Town Lake, Mullen, and Thompson appeal this judgment, asserting six points of error. We will
affirm.



FACTS


 Town Lake, a joint venture involving Robert Keener, Neal Block, Mullen, and
Thompson, borrowed $4 million from Anchor Savings in March 1984 in order to purchase a plot
of land in downtown Austin. Keener, Block, and Thompson signed the promissory note
acknowledging this debt to Anchor. The land and a $1 million certificate of deposit were
collateral for the loan. Town Lake and LIC began discussing the possibility of forming a joint
venture to construct and lease an office building on the land. In July 1984, LIC loaned Town
Lake $4.6 million to refinance the Anchor loan. The new loan contained similar terms as the
Anchor loan; the land and certificate of deposit were designated as collateral. In September 1984,
LIC loaned Town Lake an additional $100,000 to cover architectural fees. The parties produced
a draft of a contract detailing the planned joint venture in early October. However, on December
11, 1984, LIC informed Town Lake that it no longer wished to enter into the venture.

 Town Lake defaulted on both notes it owed LIC. On November 4, 1985, the
parties signed an agreement. Town Lake stipulated that the amount due on the two original notes
was $4,586,811.21. (1) In return, LIC agreed not to foreclose upon the land until January 5, 1986. 
It had foreclosed upon the certificate of deposit on August 5, 1985, but loaned Town Lake
$78,000 from these funds; this loan was due January 5th. LIC also agreed to release Keener and
Block from any liability upon two conditions: that they convey their interest in Town Lake to
Thompson or Mullen, and that they release all claims against LIC by signing a form satisfactory
to LIC. LIC never released Keener or Block and foreclosed upon the land owned by Town Lake
on December 2, 1986. 

 Town Lake filed suit, claiming LIC had (1) negligently misrepresented its intentions
about forming a joint venture with Town Lake; (2) broken its promise to form a joint venture, and
Town Lake had relied on this promise to its detriment; (3) breached an enforceable contract to
form a joint venture and to construct the office building; (4) committed deceptive trade practices;
and (5) broken its promise in the November 4, 1985, agreement to release Keener and Block. 
LIC's claims in this case involve the deficiency for the amount due on the three notes for $4.6
million, $100,000, and $78,000 after foreclosure upon the certificate of deposit and the land. The
trial court submitted questions to the jury on Town Lake's negligent misrepresentation and
promissory estoppel claims, refused to submit questions to the jury on Town Lake's claims
regarding deceptive trade practices and breach of the November 4th agreement, and directed a
verdict against Town Lake's claim that LIC had breached an agreement to form a joint venture. 
The court also directed a verdict in favor of LIC on its claims for the deficiency on the notes and
refused to submit Town Lake's proffered jury questions on its affirmative defense that LIC had
fraudulently induced Town Lake to sign the notes. The jury found in favor of Town Lake on the
submitted questions and awarded $235,000 in damages. The court offset this amount against the
damages it found LIC should recover for its claims and rendered judgment accordingly.



THE NOVEMBER 4, 1985, AGREEMENT


 Appellants' first point of error asserts that the trial court erred when it failed to ask
the jury whether LIC had breached the November 4th agreement by not releasing Keener and
Block from liability. The court's action was proper if no evidence supported the requested jury
question. Kindred v. Con/Chem., Inc., 650 S.W.2d 61, 63 (Tex. 1983).

 LIC contends that it did not breach the agreement as a matter of law because Town
Lake presented no evidence that the conditions precedent for LIC's promise to release Keener and
Block from liability ever occurred. Appellants first raise a procedural argument that this Court
cannot consider such a contention in support of the trial court's judgment because LIC failed to
plead specifically which conditions precedent did not occur.

 Town Lake's petition generally alleged that all conditions precedent had been
performed. This pleading was procedurally sufficient. Tex. R. Civ. P. 54. LIC's answer denied
that all such conditions precedent had been performed without specifically identifying any single
condition. This lack of specificity would prevent LIC from complaining on appeal about Town
Lake's failure to prove the performance of conditions precedent if Town Lake had recovered on
its claim at trial. Id.; Sunbelt Constr. Corp. v. S & D Mechanical Contractors, Inc., 668 S.W.2d
415, 417-18 (Tex. App.--Corpus Christi 1983, writ ref'd n.r.e.); Dealers Nat'l Ins. Co. v.
Simmons, 421 S.W.2d 669, 674 (Tex. Civ. App.--Houston [14th Dist.] 1967, writ ref'd n.r.e.). 
A plaintiff's compliance with Rule 54, however, merely shifts the burden of pleading to the
defendant, not the burden of proof at trial. Trevino v. Allstate Ins. Co., 651 S.W.2d 8, 11 (Tex.
App.--Dallas 1983, writ ref'd n.r.e.). Because appellants did not prevail at trial, the relevant issue
is their complaint about the trial court's failure to submit Town Lake's requested jury question. 
We conclude that LIC's general denial that all conditions precedent had been performed was
procedurally sufficient to support the trial court's action. We therefore review the merits of LIC's
assertion that Town Lake presented no evidence of the occurrence of conditions precedent to
LIC's promise to release Keener and Block from liability.

 Appellants presented evidence that Keener and Block had signed documents
transferring their interests in Town Lake to the other venturers and releasing LIC from liability. 
Thompson admitted in his testimony, however, that the releases were not "full and complete" or
"all in form satisfactory" to LIC, as required by the November 4th agreement. Appellants agree
that such a contractual provision must meet an objective standard; the relevant test is whether a
reasonable person would have been satisfied by the release. Black Lake Pipe Line Co. v. Union
Constr. Co., 538 S.W.2d 80, 89 (Tex. 1976). Appellants presented no evidence of the
reasonableness of the releases; indeed, they did not even introduce the releases or any testimony
about their terms into evidence. Without such proof, there was no evidence that the conditions
precedent to LIC's promise to release Keener and Block had been satisfied. The trial court
correctly refused to submit Town Lake's questions on LIC's alleged breach of the November 4th
agreement to the jury. We overrule appellants' first point of error.



DAMAGES


 Appellants' second point of error challenges the trial court's refusal to submit one
of Town Lake's requested jury questions on damages resulting from its negligent
misrepresentation and promissory estoppel claims. This question asked the jury to determine the
amount Town Lake should recover for out-of-pocket expenses, the lost value of the land, and the
loss of the certificate of deposit. The court submitted a damages question referring only to out-of-pocket expenses Town Lake incurred in reliance upon LIC's negligent misrepresentation about
its intentions and its promise to enter into the joint venture agreement.

 Town Lake's point of error refers to a damages question unconnected to any
specific theory of liability contained in Town Lake's proposed set of jury questions. The damages
question followed immediately after questions on fraudulent inducement, an issue only relevant
to LIC's claims on the promissory notes. Town Lake's set of proposed questions contained only
general damages questions relating to the claims of negligent misrepresentation and promissory
estoppel. Appellants therefore have not properly preserved error. See Wilgus v. Bond, 730
S.W.2d 670, 672 (Tex. 1987); see also Tex. R. Civ. P. 278. (2)

 Additionally, Town Lake's requested jury question included damages not
recoverable under the theories of liability submitted to the jury. Appellants concede that Town
Lake may recover reliance damages, but not lost profits or any "benefits of the bargain," under
a negligent misrepresentation claim. Federal Land Bank v. Sloane, 825 S.W.2d 439, 443 (Tex.
1991); see also Restatement (Second) of Torts § 552B(2) (1977). This rule also applies to a claim
of promissory estoppel. Fretz Constr. Co. v. Southern Nat'l Bank, 626 S.W.2d 478, 483 (Tex.
1981).

 Appellants do not dispute that the property and the certificate of deposit were
already designated as collateral under the Anchor Savings loan, which was formalized before LIC
began discussions with Town Lake. The LIC loan merely refinanced the Anchor loan and
contained similar terms. Appellants correctly note that reliance damages are intended to place a
party in the position from which it started. However, Town Lake did not incur the damages it
wishes to recover, the entire unencumbered value of the land and certificate of deposit, because
of its reliance upon any representation or promise by LIC. Appellants contend that Town Lake came into the LIC negotiations owning the land and the certificate of deposit and that
they merely want the value of these properties returned. However, Town Lake actually entered
the negotiations with Anchor's already-existing liens on its properties. Town Lake cannot ignore
these liens under a reliance theory of damages.

 Town Lake notes that during the negotiations, LIC discussed the possibility that
it would finance a construction loan to Town Lake to "take out" its previous loan made in July
1984, after the joint venture contract was signed. The end result of such a loan, the elimination
of the liens on Town Lake's property, clearly would be a benefit of the anticipated joint venture.

 Appellants also argue that Town Lake broke off negotiations with third parties
interested in forming similar joint ventures in reliance upon LIC's promises. Besides the problem
that Town Lake's properties were already debt-encumbered, the undisputed fact that such
negotiations only took place after LIC refused to sign a joint venture agreement makes this
argument irrelevant.

 Town Lake's jury question on damages asked for the value of the land and the
certificate of deposit, without regard to the existing liens on them. Town Lake would never have
owned these items outright except as a result of a hoped-for bargain with LIC. Town Lake did
not burden the land or the certificate of deposit with liens in the first place in reliance upon any
representations or promises from LIC. The trial court did not err in failing to submit Town
Lake's jury question on damages. The second point is overruled.



LIC'S COUNTERCLAIM


 The trial court directed a verdict for LIC on its deficiency claim based on the notes
owed by appellants. The third point of error asserts the court erred in granting this directed
verdict, based upon appellants' contention that the court should have submitted its proposed jury
question on fraudulent inducement. (3)

 Town Lake was required to plead fraudulent inducement as an affirmative defense. 
Gage v. Lansford, 615 S.W.2d 934, 940 (Tex. Civ. App.--Eastland 1981, writ ref'd n.r.e.); see
also Tex. R. Civ. P. 94. A party is not entitled to a jury question on an affirmative defense if it
failed to plead the defense. Tex. R. Civ. P. 278; Allstate Ins. Co. v. Perez, 783 S.W.2d 779, 782
(Tex. App.--Corpus Christi 1990, no writ). Town Lake failed to plead fraudulent inducement as
an affirmative defense; therefore, the trial court did not err when it failed to submit Town Lake's
proffered jury question on this issue and directed a verdict in favor of LIC on its claims.

 Appellants contend the issue of fraudulent inducement was tried by consent. A
party may not claim an affirmative defense was tried by consent if it does not plead the defense. 
Matthews v. General Accident Fire & Life Corp., 343 S.W.2d 251, 254 (Tex. 1961); Hirsch v.
Hirsch, 770 S.W.2d 924, 926 (Tex. App.--El Paso 1989, no writ). A party that failed to plead an
affirmative defense before trial may only assert an issue was tried by consent if it amended its
pleadings at trial before the charge was submitted. Bachynski v. Fox & Co., 662 S.W.2d 771,
774 (Tex. App.--Houston [14th Dist.] 1983, no writ); see also Tex. R. Civ. P. 67. Appellants did
not request a trial amendment; therefore, they may not assert that the issue of fraudulent
inducement was tried by consent. We also note that appellants do not refer to any evidence in the
record that supports their contention that the issue was tried by consent, except for a pre-trial
motion in limine LIC requested to prevent appellants from introducing any evidence on fraudulent
inducement. As this motion was not repeated at trial, it sheds no light on the subject of trial by
consent. We overrule the third point of error.



DTPA CLAIM


 Appellants' fourth point asserts error in the trial court's refusal to submit Town
Lake's jury questions on its claim that LIC had committed violations of the Deceptive Trade
Practices-Consumer Protection Act ("DTPA"), Tex. Bus. & Com. Code Ann. §§ 17.41-.63 (West
1987 & Supp. 1993). The parties dispute whether Town Lake qualifies as a "consumer" under
the DTPA. This question is one of law for the court to decide. How Ins. Co. v. Patriot Fin.
Servs., Inc., 786 S.W.2d 533, 539 (Tex. App.--Austin 1990, writ denied). A consumer is one
who seeks or acquires goods or services by purchase or lease, when the goods or services form
the basis of the complaint. Melody Home Mfg. Co. v. Barnes, 741 S.W.2d 349, 351-52 (Tex.
1987).

 Town Lake sought to borrow money to refinance its loan with Anchor Savings. 
Such a transaction does not involve the acquisition of goods or services. Riverside Nat'l Bank v.
Lewis, 603 S.W.2d 169, 173-74 (Tex. 1980). (4) Although the proposed joint venture might have
been a "consumer" if it had eventually acquired the office building, Town Lake cannot use a
future entity's status to qualify as a consumer. Moreover, the proposed building and the services
which might have related to its construction are not the basis of appellants' complaint. LIC's
alleged misrepresentations involve the formation of a joint venture, not the construction of the
building.

 Because Town Lake is not a consumer, it cannot bring an action under the DTPA. 
See Melody Home, 741 S.W.2d at 351. We overrule the fourth point.



THE JOINT VENTURE AGREEMENT


 Appellants' fifth point of error complains of the court's directed verdict against
Town Lake's claim that LIC breached its "contract" with Town Lake to form a joint venture. The
parties do not dispute that, ordinarily, a valid agreement relating to real estate must meet the
statute of frauds' requirement that it be in writing. Tex. Bus. & Com. Code Ann. § 26.01 (West
1987). LIC asserts that the parties' failure to sign a written joint venture agreement defeats Town
Lake's claim as a matter of law.

 Appellants first suggest that a draft of the proposed contract, dated October 1,
1984, serves as a "memorandum" that meets the statute of frauds' requirement of a written
agreement. LIC did not sign the draft; therefore, it cannot serve as a memorandum. Id.
§ 26.01(a)(2).

 Appellants next assert that LIC's promise to participate in a joint venture agreement
estops it from raising a statute of frauds defense. The supreme court addressed this issue in
"Moore" Burger, Inc. v. Phillips Petroleum Co., 492 S.W.2d 934, 940 (Tex. 1972): 
"Respondents read the Court's opinion to make any promise [to enter into a contract] enforceable
. . . . The promise which is determinative here is the promise to sign a written agreement which
itself complies with the statute of frauds."

 The record contains evidence that in 1984 LIC represented that a deal might be
consummated soon. No evidence exists, however, that LIC promised to sign a specific writing,
such as the October 1 draft. Even if LIC had unequivocally promised that it would soon sign a
contract, Town Lake was required to prove the promise related to a written agreement already in
existence. Consolidated Petroleum Indus. v. Jacobs, 648 S.W.2d 363, 367 (Tex. App.--Eastland
1983, writ ref'd n.r.e.).

 Furthermore, in order for promissory estoppel to apply, there must be complete
agreement between the parties that they will sign a contract with terms that are finalized. H.
Molsen & Co., Inc. v. Hicks, 550 S.W.2d 354, 356 (Tex. Civ. App.--El Paso 1977, writ ref'd
n.r.e.). Town Lake presented no evidence that the parties had definitively reached a "meeting of
the minds." Keener and Block had not agreed to sign the contract. LIC had informed Town Lake
that five conditions, involving various permits or ordinances necessary to begin construction of
the office building, had to be met before LIC would enter into a joint venture agreement. The
record evidence shows these conditions were not fulfilled before LIC communicated its refusal
to form a joint venture.

 Finally, even if appellants could rely upon promissory estoppel to avoid the statute
of frauds, the trial court's error was harmless, as Town Lake has already recovered reliance
damages at trial under a separate promissory estoppel claim. Appellants sought the recovery of
almost $9 million in lost profits at trial for LIC's alleged breach of its agreement to construct the
office building as a joint venture with Town Lake. Appellants may not recover lost profits under
any theory of promissory estoppel. Adams v. Petrade Int'l, Inc., 754 S.W.2d 696, 709 (Tex.
App.--Houston [1st Dist.] 1988, writ denied). (5) For these reasons, we overrule the fifth point of
error.

 Appellants' sixth point of error complains about the trial court's exclusion of
evidence of the potential value of the completed office building. Appellants concede that this
evidence would be relevant only if Town Lake could recover its lost profits under its claim that
LIC breached its agreement to construct the building. In light of our holding above, we conclude
the trial court did not err in excluding the evidence in question. We overrule appellants' sixth
point.

 Having overruled all of appellants' points of error, we affirm the judgment of the
trial court.



 Marilyn Aboussie, Justice

[Before Justices Powers, Aboussie and B. A. Smith]

Affirmed

Filed: June 30, 1993

[Do Not Publish]

1.   The agreement states, "[T]he parties do hereby stipulate and agree . . . [t]he principal
balances upon the Notes aggregate at this time the amount of $4,586,811.21 all of which is
due and payable by Town Lake to Lumbermen's" (emphasis added).
2.   Appellants assert that their objection to the damages question actually submitted to the
jury suffices to preserve error. However, they do not argue on appeal that this question was
erroneously submitted as a matter of law; instead, their point of error complains that the
court failed to submit additional measures of damages contained in their requested damages
question. Appellants' point of error does not mention the actual question submitted by the
court. At any rate, under Rule 278 appellants must show on appeal that they properly
submitted a question relating to a claim on which they had the burden of proof.
3.   The parties apparently agreed at trial and do not dispute on appeal that, besides the
fraudulent inducement issue, the evidence conclusively established appellants' liability for the
deficiency as a matter of law and thus supports the directed verdict. See Collora v. Navarro,
574 S.W.2d 65, 68 (Tex. 1978). Appellants stipulated the amount they owed under the three
notes in the November 4th agreement. The court calculated the damages it awarded for the
deficiency on the notes by starting with this stipulated amount and subtracting LIC's recovery
from its foreclosure on the land.
4.   This situation is different from that involving the borrowing of money to acquire a good
or service. See Flenniken v. Longview Bank & Trust Co., 661 S.W.2d 705, 707-08 (Tex. 1983). 
Town Lake did not use the amount borrowed under the first LIC note to buy the land or construct
a building, but merely to repay its existing debt to Anchor. 
5.   Appellants propose that although a party may recover only reliance damages under an
affirmative claim of promissory estoppel, it may recover lost profits when it uses this theory
to avoid the statute of frauds. They cite no authority for such a proposition, and caselaw
clearly makes no such distinction. See Macgobar N. Am. v. Grasso Oilfield Servs., Inc., 736
S.W.2d 787 (Tex. App.--Corpus Christi 1987), writ dism'd by agr., 754 S.W.2d 646 (Tex. 1988).